The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Gregory Mark KLUHSMAN, Defendant–Appellee.

No. 98SA417.

Supreme Court of Colorado, En Banc.

March 29, 1999.

Robert S. Grant, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

David F. Vela, Colorado State Public Defender, Raymond F. Joachim, Deputy State Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Justice KOURLIS delivered the Opinion of the Court.

This case comes before us on interlocutory appeal from a trial court order suppressing evidence in a prosecution for possession of

explosive or incendiary devices. We conclude that in seizing evidence of bomb-making from the defendant's house, the police acted in conformity with the exigent circumstances and plain view exceptions to the Fourth Amendment's warrant requirement. Accordingly, we reverse the trial court's suppression order with regard to that evidence.

## I.

On August 24, 1997, officers from the Aurora Police Department responded to a call at 1821 Memphis Street regarding a man hiding in some bushes. Officer Jad Lanigan arrived on the scene first at approximately 8:30 a.m. and discovered about twenty people standing in the street, some of whom were clothed in their bathrobes. A resident of the area told Officer Lanigan that his neighbor, later identified as defendant Gregory Mark Kluhsman, was hiding in the resident's shed. Officer Lanigan testified that when he asked the resident the reason for his neighbor's behavior, he replied that Kluhsman had "gone crazy."

The record indicates that as Officer Lanigan approached the resident's shed, the door to the shed burst open and Kluhsman rushed out, charging at Officer Lanigan with what appeared to be a baseball bat or a pipe. After a short struggle, Officer Lanigan took Kluhsman into custody with the help of Officer Andrew Crowley, who had arrived shortly after Officer Lanigan's first contact with Kluhsman. The officers testified that Kluhsman stated that people had been chasing him all night, that they were trying to kill him, and that he had killed a couple of his pursuers. Kluhsman also told the police that there were many people in his home, whom he said had engaged in sexual acts and urinated inside the house. Furthermore, Officer Lanigan noted that Kluhsman was covered with both dried and wet blood, that he had cuts on his skin, and that he was sweating profusely. The police called an ambulance, which soon arrived to take Kluhsman to the hospital.

Kluhsman's remarks and appearance led Officer Lanigan to be concerned for the safety of any people who might have been inside Kluhsman's house. Officer Lanigan repeated Kluhsman's statements to fellow officers who had arrived on the scene. Acting upon that information, Officer Jerry Kirby and one or two other officers entered Kluhsman's residence to look for injured people. Officer Kirby testified that once they were inside the house, they observed a number of guns "laid about," and a mercury switch, tape, alligator clips, and wiring on top of the dining room table.

Officers Lanigan and Crowley soon joined the officers inside Kluhsman's home. Officer Lanigan undertook only a brief check of the house before proceeding to the hospital to question Kluhsman.[1] Officer Crowley searched the attic and a crawl space under the floor and found a firearm.[2] He then helped Officer Kirby and the officers with him remove the firearms from the premises. At that time, the officers did not seize materials that they suspected to be physical components of explosives because of the potential danger.

As Officer Kirby and his fellow officers proceeded through the residence, they found diagrams and directions for bomb-making on top of a computer table, as well as what appeared to be an active pipe bomb on top of a box in a storage area of the home. Moreover, in that same area, the officers observed wires coming from the door toward what they thought was a firearm, wires from the door leading outside of the house, and "a lot of gunpowder" along the work bench in the room. Officer Kirby testified that the discovery of the bomb and "booby trap" materials prompted the police to notify the bomb

---

1. At the hospital, Officer Lanigan advised Kluhsman of his *Miranda* rights and informed him that the other officers had found potentially explosive material and booby traps at his residence. He then asked for and received Kluhsman's verbal and written consent to search the house and vehicles located at 1821 Memphis Street. The record indicates, and the trial court concluded, that Officer Lanigan obtained this consent after law enforcement personnel remaining at the scene had already begun to search the premises and its surroundings.

2. At the pre-trial hearing, Officer Crowley could not recall whether he found the gun in the attic or in the crawl space.

squad and to evacuate the neighborhood because of the potential danger to the community.[3] After the bomb squad secured the area, the police seized the bomb-making materials from the house. The bomb squad eventually detonated the active pipe bomb the police had found in the storage area of Kluhsman's house.

Kluhsman was charged with possession of explosive or incendiary devices in contravention of § 18–12–109, 6 C.R.S. (1998). Prior to trial, Kluhsman moved to suppress the evidence that the police discovered on his property and the statements that he allegedly made to law enforcement personnel. The findings of the trial court relevant to this appeal are the following: (1) that the warrantless entry of Officer Lanigan "and possibly some of the other officers" into Kluhsman's home was permissible because of exigent circumstances regarding the potential presence of injured individuals inside the residence; (2) that the police permissibly discovered the mercury switch, tape, and alligator clips on the dining room table and the diagrams and instructions on the computer table in plain view; (3) that once Officer Kirby first discovered what looked like bomb-making equipment in plain view, he was obligated to stop the search and obtain a warrant for the search of the rest of the house; and (4) that because Officer Kirby and the other officers continued the warrantless search of Kluhsman's home after finding bomb-making equipment in plain view, and because Officer Lanigan did not obtain Kluhsman's consent to search until after the other officers had searched the home, all of the items police found in the house after Officer Kirby first discovered the mercury switch, tape, and alligator clips were the fruits of an invalid search. Thus, the trial court suppressed the pipe bomb and the booby trap materials police found in the storage area of Kluhsman's home.[4]

Pursuant to C.A.R. 4.1, the People filed an interlocutory appeal of the trial court's suppression order. We conclude that in this case, the police were justified in searching without a warrant any area large enough to accommodate an injured person, and that the court should not have suppressed any evidence that the police found in plain view during the course of such a search. Moreover, the plain view discovery of bomb-making equipment created a new exigent circumstance, the danger of explosion, which provided an independent justification for police to continue to search the house. We therefore reverse the trial court's suppression order with regard to the evidence of explosives that police found in Kluhsman's storage area, and we remand for further proceedings.

II.

In this appeal, the parties do not dispute that exigent circumstances justified the officers' initial entry into Kluhsman's home and that consequently the police made a valid plain view discovery of the mercury switch, tape, alligator clips, and bomb-making instructions. Rather, the question before us is the propriety of the trial court's suppression of evidence that the police found in Kluhsman's home subsequent to their initial plain view discovery of incriminating evidence.

The People argue that the seizure of the incriminating evidence in Kluhsman's residence was reasonable because police acted pursuant both to the exigent circumstances and to the plain view exceptions to the warrant requirement. They contend that once the police legitimately entered the home to search for injured people, they were entitled

---

**3.** Approximately an hour after the police first made contact with Kluhsman, another officer arrived on the scene and inspected the vehicles parked in front of the residence. He found a pick-up truck with flat tires, in which he observed wiring going into a battery case that was connected to what appeared to be the metal grid from a refrigerator. He also examined a car near the house and saw duct tape that seemed to attach some type of device to the steering wheel. In addition, the officer discovered several PVC pipes with wires around them in Kluhsman's yard—one hung in a bush and others laid scattered on the ground.

**4.** The trial court also suppressed the gun that Officer Crowley found in the course of his search of Kluhsman's attic and crawl space. The court did not suppress the evidence of explosives police found in Kluhsman's yard and in the vehicles parked in front of his home. Those rulings are not at issue here.

to complete such a search of the entire premises. Accordingly, the People argue, the trial court erred in ruling that police were obligated to stop searching and to obtain a warrant as soon as they discovered the first evidence of explosives in Kluhsman's home. Moreover, the People allege, the discovery of materials related to bomb-making in the house created an additional justification for the police to search Kluhsman's home for any active explosive devices that might threaten public safety. Thus, police seized all evidence from Kluhsman's home in accordance with established exceptions to the warrant requirement. Under the circumstances of this case, we agree.

### A.

 In order to pass constitutional muster, searches and seizures of private property must be reasonable. See U.S. Const. amend. IV; Colo. Const. art. II, § 7; see also, e.g., People v. Archuleta, 980 P.2d 509, 512 (Colo. 1999). A warrantless search and seizure is unreasonable unless justified by an established exception to the Warrant Clause of the Fourth Amendment. See, e.g., People v. Salazar, 964 P.2d 502, 504 (Colo.1998).

 One such exception applies when exigent circumstances exist that necessitate immediate police action. See, e.g., People v. Jansen, 713 P.2d 907, 911 (Colo.1986). In these circumstances, evidence discovered in the course of a warrantless search is admissible if the prosecution establishes both probable cause to support the search and exigent circumstances justifying the unauthorized entry. See People v. Crawford, 891 P.2d 255, 258 (Colo.1995); Jansen, 713 P.2d at 911. There are three situations in which exigent circumstances justify a warrantless search: (1) the police are engaged in "hot pursuit" of a fleeing suspect; (2) there is a risk of immediate destruction of evidence; or (3) there is a colorable claim of emergency threatening the life or safety of another. See, e.g., People v. Lewis, 975 P.2d 160, 168 (Colo. 1999); People v. Schafer, 946 P.2d 938, 945 (Colo. 1997). The scope of the intrusion must be strictly circumscribed by the exigency justifying the initiation of the warrantless intrusion. See People v. Wright, 804 P.2d 866, 869 (Colo.1991); People v. Higbee, 802 P.2d 1085, 1088 (Colo.1990).

 A second established exception to the Warrant Clause is the plain view doctrine. See, e.g., Coolidge v. New Hampshire, 403 U.S. 443, 465–67, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); People v. Dumas, 955 P.2d 60, 63 (Colo.1998). "Under this doctrine, when police officers are conducting a legitimate search, they are not required to close their eyes to other incriminating evidence plainly visible to them."[5] Thus, police may seize evidence in plain view as long as: (1) the initial police intrusion onto the premises was legitimate; (2) the police had a reasonable belief that the evidence seized was incriminating; and (3) the police had a lawful right of access to the object.[6]

---

**5.** Dumas, 955 P.2d at 63. The plain view exception addresses warrantless seizures of evidence. It does not implicate the warrantless "search" for evidence in plain view because if an article is already in plain view, its observation does not involve an invasion of privacy in violation of the Fourth Amendment. See Horton v. California, 496 U.S. 128, 141, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Thus, the observation of evidence in plain view is not a search for purposes of the Fourth Amendment and does not require a warrant.

**6.** See Horton, 496 U.S. at 137, 110 S.Ct. 2301. In the past, we have characterized the criteria for a valid plain view seizure as follows: (1) that the initial police intrusion onto the premises was legitimate; (2) that the discovery of evidence was inadvertent; and (3) that the police had a reasonable belief that the evidence seized was incriminating. See, e.g., Dumas, 955 P.2d at 63; Schafer, 946 P.2d at 945; People v. Milton, 826 P.2d 1282, 1285 (Colo.1992). This formulation of the test mirrored that of the plurality in Coolidge. See Coolidge, 403 U.S. at 466, 91 S.Ct. 2022.

In Horton v. California, however, the Supreme Court held that although inadvertence was a characteristic of most plain view searches, the inadvertence criterion adopted by a plurality in Coolidge was not in fact a requirement of the Fourth Amendment. See Horton, 496 U.S. at 130, 110 S.Ct. 2301. Rather, the Court listed the requirements that we repeat today, without the necessity of inadvertent discovery.

We recognized the distinction between Coolidge and Horton in People in the Interest of R.A., 937 P.2d 731, 739 (Colo.1997) and People v. O'Hearn, 931 P.2d 1168, 1173 n. 5 (Colo.1997), and we applied portions of the Horton test in People v. Staton, 924 P.2d 127, 135–36 (Colo.

■ As with other exceptions to the warrant requirement, the exigent circumstances exception may combine with the plain view doctrine to justify a warrantless search and seizure. When probable cause and exigent circumstances justify the officer's presence, the first requirement of the plain view doctrine is satisfied. *See People v. Harper*, 902 P.2d 842, 845 n. 2 (Colo.1995) (holding that the emergency doctrine fits into the framework of the plain view exception by satisfying the first requirement necessary for the exception to apply). Then, the inquiry becomes whether the officers reasonably believed the evidence was incriminating and whether they had lawful access to the evidence. *See Horton*, 496 U.S. at 137, 110 S.Ct. 2301.

### B.

■ Here, there is no dispute that exigent circumstances justified the officers' initial entry into Kluhsman's home for the purpose of searching for injured people.[7] Kluhsman's appearance and statements regarding people he claimed to have killed gave rise both to probable cause to justify the search and a colorable claim that people were in danger or injured. *See Lewis*, 975 P.2d at 168; *Schafer*, 946 P.2d at 945.

■ Therefore, since the police had a legitimate reason for entering the house and had lawful access to objects therein, they were entitled to seize incriminating evidence in plain view. The mercury switch, alligator clips, and tape were lying openly on Kluhsman's table, and the incriminating nature of these materials was readily apparent to the officers.[8] Thus, the seizure of these materials met the requirements of the plain view

doctrine. *See Horton*, 496 U.S. at 137, 110 S.Ct. 2301.

■ Further, we do not agree with the trial court that as soon as the police discovered this incriminating evidence in plain view, they were obligated to stop searching Kluhsman's house. Rather, once the officers made a valid entry into the home, the scope of their search was limited only by the exigency that justified the warrantless intrusion. *See Wright*, 804 P.2d at 869; *Higbee*, 802 P.2d at 1088. We reach this conclusion for two reasons.

■ First, because the exigency in this circumstance was the potential presence of injured people, the police could continue to search every area in which they reasonably believed they could find a person. *See People v. Thompson*, 770 P.2d 1282, 1285 (Colo. 1989); *cf. Maryland v. Buie*, 494 U.S. 325, 332–34, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990) (concluding that officers who had an arrest warrant and probable cause to believe that the defendant was in his house could search anywhere in the house in which he might be found, but that once he was found there was no longer that particular justification for entering any rooms that had not yet been searched). In the course of searching for wounded people, the police were entitled to seize any evidence in plain view that they reasonably believed was incriminating and to which they had lawful access. *See Horton*, 496 U.S. at 137, 110 S.Ct. 2301; *People v. Unruh*, 713 P.2d 370, 379 (Colo.1986) (concluding that when police officers are legitimately on the premises under the emergency doctrine, they may seize incriminating evidence discovered in plain view); *People v. Harding*, 620 P.2d 245, 247 n. 2 (Colo.1980)

---

1996). We now adopt the *Horton* test as the proper characterization of the requirements police must meet in order to seize evidence pursuant to the plain view exception to the Fourth Amendment's warrant requirement.

**7.** The initial entry was also consistent with the emergency doctrine, pursuant to which police can obtain evidence even in the absence of probable cause. *See People v. Amato*, 193 Colo. 57, 60, 562 P.2d 422, 424 (1977) (noting that under that doctrine, police can obtain evidence or seize contraband when there exists "an immediate crisis and the probability that assistance will be

helpful"); *see also Harper*, 902 P.2d at 845 n. 2 (noting that the requirements of the emergency doctrine are separate and distinct from those of the exigent circumstances exception).

**8.** A reasonable belief that the evidence was incriminating exists when the incriminating nature of the evidence was immediately apparent to the searching officer. *See Dumas*, 955 P.2d at 63. Officer Kirby testified that when he saw the mercury switch, tape, alligator clips, and wiring on Kluhsman's table, he recognized the material as "bomb making equipment."

(noting that once exigent circumstances validate police officers' original entry into a premises, exigent circumstances are not necessary to validate the seizure of evidence in plain view).

■ Second, the discovery of bomb-making devices and materials in the home of a man who police had reason to believe was paranoid and delusional created a new exigent circumstance: the danger of explosion. As we have previously noted, Officer Kirby testified that when he saw the mercury switch, tape, alligator clips, and wiring in plain view on Kluhsman's table, he recognized the material as "bomb making equipment." The discovery of such equipment constituted probable cause that additional explosive materials might be located in Kluhsman's home, and unveiled a second colorable claim of emergency, specifically, the possibility that the explosives in Kluhsman's home could detonate.

■ At that point, in addition to searches for injured people, the police were entitled to search in any area in which explosives could be located. *See* discussion *supra; Wright,* 804 P.2d at 869; *Higbee,* 802 P.2d at 1088. Because of the volatile nature of those materials, it was prudent for the police to search the home for explosives and to secure the area as quickly as possible in order to minimize the danger to public safety. Stopping to obtain a search warrant would have created an unnecessary risk that the explosive materials in Kluhsman's house might have detonated. Thus, police acted properly pursuant to a second exigency. Because the presence of the bomb-making materials provided probable cause as well as a colorable claim of a threat to public safety, the officers' continued search of Kluhsman's home and their seizure of the bomb and the booby trap materials in the storage area were lawful under the exigent circumstances exception to the warrant requirement. *See Lewis,* 975 P.2d at 168; *Schafer,* 946 P.2d at 945.

### III.

Thus, we reject the notion that the Fourth Amendment precludes further search upon the lawful discovery of materials that could pose a threat to the officers or others. Here, the police were searching an area for injured persons pursuant to exigent circumstances and discovered evidence of explosives in plain view. That discovery of bomb-making materials created an independent exigency regarding the potential presence of live explosives. Accordingly, we hold that the conduct of the police in this case satisfied the plain view and exigent circumstances exceptions to the warrant requirement. We therefore reverse the suppression order of the trial court regarding that evidence, and we remand this case for further proceedings.