**The PEOPLE of the State of Colorado, Plaintiff–Appellant,**

v.

**Avis Laverne PITTS, Defendant–Appellee.**

**No. 00SA204.**

Supreme Court of Colorado, En Banc.

Nov. 14, 2000.

Jeanne M. Smith, District Attorney, Fourth Judicial District, Cynthia McKedy, Deputy District Attorney, Gordon R. Denison, Deputy District Attorney, Colorado Springs, CO, Attorneys for Plaintiff–Appellant.

David S. Kaplan, Colorado State Public Defender, Eydie Elkins, Deputy State Public Defender, Colorado Springs, CO, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1 to contest the trial court's order suppressing items seized during the valid execution of a search warrant. The trial court suppressed items that were not particularly described in the warrant, finding that seizure of those items was not authorized by the warrant or by the plain view doctrine. The trial court also ruled that the police officers could not testify as to their observations of the items that were suppressed.

We must affirm the ruling due to the factual findings of the trial court and the lack of any additional evidence in the record before us. The trial court found that the only witness who was present at the search was not credible. Moreover, the officer who actually seized the evidence did not testify.

Therefore, the People have not met their burden to prove that either the search warrant or the plain view doctrine authorized the seizure of these items. Further, the People have not demonstrated what, if anything, the officers observed before the evidence was moved. Accordingly, we must also affirm the trial court's suppression of the officers' observations of the seized evidence.

## I.

On December 12, 1998, Colorado Springs police executed a search warrant at the apartment of the defendant, Avis Pitts. The search warrant authorized a search for narcotics, drug paraphernalia, and indicia of ownership or occupancy of the apartment. It further authorized a search for all records, including but not limited to, notebooks, personal diaries, client lists, address books, phone directories, or scraps of paper that reflected drug transactions.

During the execution of the search warrant, officers found a small amount of crack cocaine in a bedroom belonging to Pitts. Detective Ralph Maher testified that another officer also found checks, a social security card, and other items of identification in the same bedroom. The names on these items were not the names of the people known to be living in the apartment. After observing the names on these items, officers contacted the Colorado Springs Police Department in an unsuccessful attempt to learn whether the items had been reported stolen. Despite the lack of success in determining whether the items were stolen, the officers seized the items as evidence.

On February 4, 1999, as the result of an investigation into a series of purse snatchings from elderly women in the Colorado Springs area, Pitts was arrested and charged with multiple counts of robbery and other offenses related to those counts. On April 30, 1999, Pitts filed a Motion to Suppress Evidence, requesting suppression of the items seized during the execution of the search warrant.

In her Motion to Suppress Evidence, Pitts claimed that these items were not particularized as subject to seizure in the search warrant, and that the seizure of the items,

therefore, violated her right to be free from unreasonable searches and seizures under the United States and Colorado Constitutions. The People argue that the items were "indicia of ownership" of the seized drugs or, in the alternative, were in plain view. The People also argue that the officers' observations of the items are admissible even if the items are suppressed.

At the hearing held on this motion on June 17, 1999, Detective Maher, who led the execution of the search warrant, testified that another officer, Detective Doll, searched Pitts's bedroom and discovered the checks, license, and social security card. Maher further testified that he did not know exactly where Doll found the items, but only that Doll had called him into the bedroom after seizing the items. Detective Doll did not testify.

The trial court suppressed the items found in the search relying on our plain view analysis in *People v. Staton*, 924 P.2d 127 (Colo. 1996). The trial court held that the incriminating nature of the evidence was not immediately apparent to the officers but was associated with two of the seven victims named in this case only after the search, and as such, was improperly seized. In response to the prosecution's request for clarification, the trial court also specifically suppressed the police officers' observations of the suppressed items.

The prosecution then initiated its first interlocutory appeal. Finding the record inadequate to permit proper review, we reversed and remanded to the trial court. As the record before us only referred to the seized items in general terms, we specifically directed the trial court to identify with particularity each item at issue in the motion. In our order, we also directed the trial court to make any further findings of fact necessary to support its order, including determining the credibility of witnesses and finding the "facts known to the police officers who seized the items at the time of that seizure."

Pursuant to our direction, the trial court elected to entertain testimony on remand. Detective Doll, who found the items but did not testify at the earlier hearing, did not testify at the post-remand hearing. Instead, all the evidence about the search was offered through the testimony of Detective Maher. After first finding that the testimony of Maher was not credible, the trial court again suppressed the items found in the search. In his testimony in the post-remand suppression hearing, Maher contradicted his testimony at the earlier hearing by stating that the items were taken from the apartment as evidence of the ownership of drugs. At the earlier suppression hearing, he had testified that the items were taken from the apartment because they may have belonged to victims or drug associates. The trial court cited these inconsistencies in Maher's testimony as the reason for its conclusion that the testimony was not credible. The trial court thus concluded that Maher "did not have anything to show that—or did not have ... a reasonable belief that the evidence seized was incriminating."

Additionally, the trial court held that the officers could not testify as to their observations of the suppressed items. In its ruling, the trial court distinguished the case at bar from *People v. Conley*, 804 P.2d 240 (Colo. App.1990), in which police officers were permitted to testify as to the serial numbers that the officers observed on stolen stereo equipment. The trial court differentiated this case from *Conley* by noting that, in *Conley*, the officers did not actually physically move the items as they had done here. The prosecution then filed this interlocutory appeal.

## II.

We must defer to a trial court's findings of fact if those findings are supported by competent evidence in the record. *See People v. Arroya*, 988 P.2d 1124, 1129 (Colo.1999); *People v. Jordan*, 891 P.2d 1010, 1012 (Colo.1995). We will not substitute our own judgment for that of the trial court unless the trial court's findings are clearly erroneous or not supported by the record. *See People v. Mendoza–Balderama*, 981 P.2d 150, 158 (Colo.1999). It is the function of the trial court, and not the reviewing court, to weigh evidence and determine the credibility of the witnesses. *See id.; People v. Thomas*, 853 P.2d 1147, 1149 (Colo.1993). Appellate review of a hearing on a motion to suppress

is a mixed issue of law and fact. *See People v. Romero*, 953 P.2d 550, 555 (Colo.1998). While we will defer to a trial court's findings of fact that are supported in the record, the trial court's legal conclusions are subject to de novo review. *See id.; People v. Quezada*, 731 P.2d 730, 732–733 (Colo.1987).

Both the United States and Colorado Constitutions afford protection from unreasonable searches and seizures. *See* U.S. Const. amend. IV; Colo. Const. art. II, § 7. In order to pass constitutional muster, searches and seizures of private property must be reasonable. *See People v. Archuleta*, 980 P.2d 509, 512 (Colo.1999). The determination of whether a search or seizure is reasonable depends upon the reason for and the extent of the intrusion. *See, e.g., Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The burden is on the People to prove that a search or seizure is reasonable. *See Mendez v. People*, 986 P.2d 275, 280 (Colo.1999).

Items may be seized pursuant to a valid warrant if described with particularity in the warrant. *See generally People v. Montoya*, 185 Colo. 299, 304, 524 P.2d 76, 78 (1974) (holding that the Fourth Amendment requires particular description of items in a warrant to ensure that the proper items are taken in a search). In contrast, a warrantless search and seizure will be found unreasonable unless justified by an established exception to the Warrant Clause of the Fourth Amendment. *See People v. Salazar*, 964 P.2d 502, 504 (Colo.1998). The plain view doctrine is one such established exception. *See People v. Dumas*, 955 P.2d 60, 63 (Colo.1998).

Under the plain view exception, police are not required to close their eyes to any evidence that they plainly see while conducting otherwise legitimate searches. *See id.* The plain view doctrine allows police to seize, without a proper search warrant, evidence that is plainly visible, so long as: (1) the initial intrusion onto the premises was legitimate; (2) the police had a reasonable belief that the evidence seized was incriminating; and (3) the police had a lawful right of access to the object. *See People v. Kluhsman*, 980 P.2d 529, 534 (Colo.1999). The second prong exists when police have proba-

ble cause to believe the evidence is incriminating, and the incriminating nature is immediately apparent to the seizing officer. *See Arizona v. Hicks*, 480 U.S. 321, 326–28, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *People v. Smith*, 13 P.3d 300, 308–309 (Colo.2000); *People v. Najjar*, 984 P.2d 592, 597 (Colo.1999); *see also People v. Melgosa*, 753 P.2d 221, 225 (Colo.1988).

## III.

In ruling on the suppression motion, the trial court held that the police intrusion onto the premises was legitimate in light of the valid search warrant that had been issued to Detective Maher pursuant to the drug investigation. The trial court also concluded that the police had a lawful right of access to the objects suppressed. Because the search warrant authorized a search for drugs, drug paraphernalia, and items of indicia, the trial court further held that the police could properly search in various small places: inside checkbooks; inside drawers; under beds; and, "just about any place."

However, the trial court found that the police did not have any information that the items found related to narcotics or were associated with anyone living in the apartment. After referring to the plain view test we delineated above, the trial court concluded that there was no showing of a reasonable belief that the items were incriminating when discovered. Finally, the trial court refused to admit the police observations of the seized items because the items had been actually touched, physically moved, and taken into evidence.

Central to our review is the trial court's finding that Detective Maher's testimony was not credible. Because Maher, who did not actually find the items, was the only officer present at the search who testified, that testimony is the sole support for a determination that the items were evidence of possession of drugs. Any conclusion that the incriminating nature of the items was immediately apparent to the officer who found them also rests upon the strength of Maher's testimony. However, we cannot consider any testimony the trial court found incredible.

While we conclude that the trial court rejected Maher's testimony as incredible, we recognize that it is arguable that the trial court only intended to reject Maher's opinion that he had a reasonable belief that the items seized were incriminating. The trial court found that on one occasion Maher testified that the items were seized "because they were items of indicia." Concerned about inconsistency in Maher's testimony, the court continued, "However, on June 17th of 1999, [Maher] testified the complete opposite: That the items were not taken as indicia of ownership. He said the items were taken because they may belong to victims or drug associates." After citing this inconsistency, the trial court specifically concluded that Maher's testimony was not credible:

> So the Court does not find Mr. Maher's testimony to be credible, because at one point he says they're taken as possible items of indicia; the other time he says they were not. He then later on says they were certainly items of indicia and he says the items were seized to see how they tied into the case or if they did tie into the case.

The trial court further held that Maher did not have a reasonable belief that the evidence seized was incriminating.

In order to interpret the trial court's findings as limited to a determination that Maher's testimony was incredible only on the subject of whether he had a reasonable belief that the items seized were incriminating, we would necessarily make several assumptions. First, that the trial court did not intend its broad statement that it did not find Maher's testimony credible. Second, that the trial court instead intended to cite the inconsistencies only as that part of the testimony that was not credible, rather than citing the inconsistencies, as it did, as evidence that the entire testimony was incredible. Third, that the trial court mistakenly thought that Maher's subjective beliefs about why the items were seized was critical to the court's objective determination that a reasonable belief that the evidence was incriminating existed. This latter assumption implies that the trial court did not understand the applicable standard of law and misunderstood the instruction in our order that it find "the *facts* known

to the police officers who seized the items at the time of that seizure."

We conclude that the trial court's finding that Maher's testimony about the facts was not credible, is more reasonably interpreted as a finding that the trial court believed Maher only to the extent that it made specific findings based on his testimony. This interpretation is consistent with the plain meaning of the language used by the court, with the trial court's function as finder of fact, and with our directions to the trial court on remand.

Using the above interpretation, we will not disturb the trial court's finding that Maher was not credible. Further, the trial court's explanation that it found Maher's inconsistent testimony incredible is supported by the record. On June 17, 1999, Maher testified, "These items were not taken as indicia of ownership in that apartment, they were taken because they may belong to victims or drug associates." However, on May 4, 2000, Maher again testified, this time stating, "I knew at the time that they were possible items of indicia of people that were associated with the apartment.... They were certainly items of indicia.... At that time ... they were seized as evidence to be evaluated to see if they actually fit in this case or not."

We defer to the trial court's determination that Maher was not credible. "When trial courts find that testimony is not credible, such determinations appear in the trial court's findings and order and, thus, will be upheld on appeal." *People v. D.F.,* 933 P.2d 9, 15 (Colo.1997). Thus, we are limited to the trial court's specific factual findings and may not look to Maher's testimony for additional facts. *See id.* at 14.

Without credible testimony from a searching officer showing the items were properly seized, there is no evidence in the record that supports any conclusion contrary to that of the trial court. The trial court, therefore, properly held that the items had been seized in violation of the Warrant Clause of the Fourth Amendment and that the items had not been seized pursuant to the plain view exception to the warrant requirement.

In addition to suppressing the items found in the search of Pitts's bedroom, the trial court explicitly suppressed testimony of the police officers' observations of the items that were found. The People argue that even if the items were suppressed, the officers could still testify as to what they had observed. In support of this argument, the People cite *People v. Conley*, 804 P.2d 240 (Colo.App. 1990).

The record does not provide credible testimony about what, if anything, the searching officer observed before seizing the items. There is no evidence detailing what occurred in the search of Pitts's bedroom. Because there is no credible testimony in the record revealing anything about the seizure of the items in the bedroom, we cannot reach the People's claim that the Fourth Amendment does not require the suppression of the observations of the officers. Thus, this case does not present an opportunity for us to discuss the issue resolved by the court of appeals in *Conley* .

### IV.

We have deferred to the trial court's factual finding that the principal witness was not credible. Thus, the record is devoid of any evidence contradicting the findings of the trial court or supporting different conclusions. We therefore affirm the trial court's order suppressing the items found in the search and any observations of those items. Accordingly, we remand the case to the trial court for further proceedings consistent with this opinion.