The PEOPLE of the State of Colorado,
Plaintiff–Appellant.

v.

Yvonne Marie GOTHARD,
Defendant–Appellee.

No. 08SA40.

Supreme Court of Colorado,
En Banc.

June 9, 2008.

Don Quick, District Attorney, Seventeenth Judicial District, Michael J. Milne, Senior Deputy District Attorney, Brighton, Colorado, Attorneys for Plaintiff–Appellant.

Douglas K. Wilson, Colorado State Public Defender, Emily M. Fleischmann, Deputy State Public Defender, Brighton, Colorado, Attorneys for Defendant–Appellee.

Justice MARTINEZ delivered the Opinion of the Court.

The People bring this interlocutory appeal pursuant to C.A.R. 4.1, seeking review of the trial court's suppression of methamphetamine and drug paraphernalia seized from the motel room of the defendant, Yvonne Marie Gothard. The trial court held that exigent circumstances authorized the police officer's entry into Gothard's motel room without a warrant. Further, the trial court found that the officer observed a baggie of methamphetamine on the nightstand in plain view while he was lawfully present in the room. However, the trial court reasoned that although exigent circumstances authorized the officer to observe the methamphetamine, it did not provide a basis by which the officer could seize the methamphetamine. Finally, the trial court held that exigent circumstances did not authorize the seizure of drug paraphernalia that the officer discovered in the nightstand drawer after arresting Gothard. Thus, the trial court held that the seizures violated the Fourth Amendment and

ordered the suppression of the methamphetamine and the paraphernalia.

Reviewing the trial court's factual findings and conclusions of law, we hold that the plain view doctrine authorized the warrantless seizure of the methamphetamine after the officer rightfully entered the motel room under exigent circumstances and the baggie of methamphetamine was in plain view on the nightstand. Furthermore, we hold that incident to Gothard's arrest, the officer appropriately searched the area within Gothard's immediate control and properly seized drug paraphernalia that he discovered in the drawer of the nightstand. Accordingly, we reverse the trial court's suppression order.

## I.

On August 2, 2007, Adams County Sheriff's Deputy Doug Kelsay was dispatched to the Valli Hi Motel after a call from an unknown person indicated that some "funny stuff" was going on at the motel. While walking around the motel, Deputy Kelsay heard an argument erupt inside room 201. Deputy Kelsay distinguished one male and one female voice, and as he listened from outside the door, he heard the argument grow progressively louder until the two individuals were screaming and shouting at each other. Deputy Kelsay knocked on the door, and a man later identified as Andrew Shields opened the door. The deputy asked where the woman was, to which Shields denied there was a woman in the room. While another deputy physically restrained Shields, Deputy Kelsay entered the motel room to look for the woman and quickly determined that she was in the bathroom. After Deputy Kelsay ordered the woman to exit the bathroom and asked her to stand by the beds, he questioned her about the fight to determine whether it had become physical. While talking to the woman, Deputy Kelsay observed a little ziploc baggie with a clear crystal substance, which appeared to be methamphetamine, sitting on a nightstand about six or seven feet away.

After the deputy was assured that the argument did not involve domestic violence, he asked for the woman's name. Twice the woman gave a false name that revealed no records when checked by the deputies. Finally, when asked a third time, she gave her real name as Yvonne Gothard and her date of birth, at which point the deputies discovered that Gothard had an outstanding warrant. Before arresting Gothard, Deputy Kelsay asked if the methamphetamine belonged to her. Gothard denied that the drugs were hers and claimed that they belonged to Shields.

Deputy Kelsay arrested Gothard on the warrant, turned her over to another deputy, and then seized the baggie of methamphetamine on the nightstand. At that time, he also found and seized some drug paraphernalia that was inside the closed nightstand drawer.

While in the back of the patrol car, Gothard spontaneously told Deputy Brad French that "whatever was in the motel room was hers." After Deputy French responded that they had found some methamphetamine and drug paraphernalia, Gothard stated that these items belonged to her and that she had just purchased the methamphetamine from a couple in room 103.

Gothard was charged with possession of one gram or less of a schedule II controlled substance, to which she pleaded not guilty. Before trial, defense counsel filed a motion to suppress statements, evidence, and observations. After a hearing on the suppression motion, the trial court held that exigent circumstances authorized the officer's entry into the motel room without a warrant. The court further concluded that Deputy Kelsay's sweep of the room and bathroom was prudent under the circumstances surrounding the contact with Gothard and Shields. Additionally, the court found that the baggie of methamphetamine had been in plain view on the nightstand. Finally, the trial court found that "at that juncture [when Gothard was being taken into custody], the methamphetamine was seized and apparently there was a continuing and ongoing search of the nightstand which led to seizure of [the paraphernalia] from the drawer."

After making these findings and conclusions, the trial court held that "while you can observe things while you're in there, legally and lawfully, on exigent circumstances ...

you can't seize things." Thus, the trial court concluded that after Gothard's arrest, the officers should have obtained a search warrant and returned to seize the items they observed while in the motel room lawfully based on exigent circumstances. Accordingly, the trial court suppressed the methamphetamine and drug paraphernalia seized after Gothard's arrest.

Pursuant to C.A.R. 4.1, the People filed an interlocutory appeal of the trial court's suppression order.

## II.

■ As a preliminary matter, we address Gothard's contention that the trial court erred in holding that exigent circumstances authorized the officer's warrantless entry into Gothard's motel room and in concluding that the officer's sweep of the room was prudent and appropriate under the circumstances. We conclude that we cannot review the merits of Gothard's arguments.

C.A.R. 4.1 provides an appeal for the prosecution rather than the defendant. *See* C.A.R. 4.1(a) ("The state may file an interlocutory appeal in the supreme court from a ruling of a district court granting a motion ... made in advance of trial by the defendant ... to suppress evidence ...."); *see also* § 16–12–102(2), C.R.S. (2007). As a result, we are without jurisdiction to address an issue that the trial court resolved in favor of the prosecution. *See People v. Reyes,* 956 P.2d 1254, 1256 (Colo.1998) (holding that issues resolved in favor of the prosecution cannot be considered on the prosecution's interlocutory appeal from an order granting the defendant's suppression motion). Thus, for the purposes of this interlocutory appeal, we assume that the trial court's findings regarding exigent circumstances were correct, and we do not consider the merits of Gothard's arguments. *See id.*

■ Properly before us is the issue of the officer's seizure of the methamphetamine on the nightstand and the drug paraphernalia in the closed drawer of the nightstand. The People present two arguments supporting the reversal of the trial court's suppression order. First, the People contend that the plain view doctrine authorized the seizure of the baggie of methamphetamine. Second, the People argue that the drug paraphernalia was properly seized pursuant to the rule allowing officers, when making a lawful arrest, to search the arrestee's person and the area within the arrestee's immediate control. We agree with both arguments.

■ Review of a trial court's suppression order is a mixed question of law and fact. *See People v. Pitts,* 13 P.3d 1218, 1221–22 (Colo.2000); *People v. D.F.,* 933 P.2d 9, 14 (Colo.1997). We must defer to the trial court's findings of fact if those findings are supported by competent evidence in the record. *See Pitts,* 13 P.3d at 1221; *D.F.,* 933 P.2d at 14. However, the trial court's legal conclusions are subject to de novo review. *Pitts,* 13 P.3d at 1222; *D.F.,* 933 P.2d at 14.

■ It is well settled that warrantless searches and seizures are presumptively invalid under the Fourth Amendment to the U.S. Constitution and article II, section 7 of the Colorado Constitution unless justified by an established exception to the warrant requirement. *See Pitts,* 13 P.3d at 1222; *People v. Harding,* 620 P.2d 245, 246 (Colo.1980). One well-defined exception is the plain view doctrine, which provides that "police are not required to close their eyes to any evidence that they plainly see while conducting otherwise legitimate searches." [1] *Pitts,* 13 P.3d at 1222. The doctrine allows police to seize, without a warrant, evidence that is plainly visible, so long as: (1) the initial intrusion onto the premises was legitimate; (2) the police had a reasonable belief that the evidence seized was incriminating; and (3) the police had a lawful right of access to the object. *Id.; see also People v. Kluhsman,* 980 P.2d 529, 534 (Colo.1999). When proba-

---

1. More properly characterized, the plain view doctrine is only an exception to warrantless seizures of evidence. *See Horton v. California,* 496 U.S. 128, 134, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). "If an article is already in plain view, neither its observation nor its seizure would invoke any invasion of privacy." *Id.* at 133–34, 110 S.Ct. 2301. Thus, the observation and seizure of the item does not implicate concerns of a Fourth Amendment "search." *Id.* at 134 n. 5, 110 S.Ct. 2301.

ble cause and exigent circumstances justify the officer's presence, the first requirement of the plain view doctrine is satisfied. *Kluhsman,* 980 P.2d at 535. The second prong exists when police have probable cause to believe the evidence is incriminating, and the incriminating nature is immediately apparent to the seizing officer. *Pitts,* 13 P.3d at 1222.

In the case before us, the plain view doctrine justified the seizure of the baggie of methamphetamine that was resting on top of the nightstand. First, the trial court held that exigent circumstances authorized the officer's warrantless entry into the motel room and that the officer's sweep of the room and bathroom was prudent and appropriate. Therefore, the initial intrusion onto the premises was authorized. Second, from where Deputy Kelsay interviewed Gothard, he viewed a small ziploc baggie with a clear crystalline substance, which he believed to be methamphetamine. Thus, the incriminating nature of the evidence was immediately apparent. Consequently, because the plain view doctrine authorized the seizure of the baggie of methamphetamine, we reverse the trial court's order suppressing its admission at trial.

 A second well-settled exception to the warrant requirement allows law enforcement officers, when making a lawful arrest, to search an arrestee's person and the area within the arrestee's immediate control. *See Chimel v. California,* 395 U.S. 752, 762–64, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); *People v. Hufnagel,* 745 P.2d 242, 245 (Colo. 1987). These searches incident to a lawful arrest must be contemporaneous with or immediately following the arrest and confined to an area into which the defendant might reach or grab for weapons or evidence. *People v. Syrie,* 101 P.3d 219, 222 (Colo.2004). We have declined to require case-by-case analyses of the actual extent of an arrestee's immediate control or "wingspan." *See Hufnagel,* 745 P.2d at 247 (holding that the fact that arrestee was handcuffed did not change the wingspan analysis); *see also Syrie,* 101 P.3d at 222. Rather, the prosecution can meet its burden by showing that the search was contemporaneous with or immediately following the arrest and limited to an area immediately around the arrestee. *Syrie,* 101 P.3d at 222.

 Here, the prosecution presented testimony that the search, which yielded the paraphernalia in the nightstand drawer, immediately followed Gothard's arrest and was confined to an area immediately around Gothard. Deputy Kelsay testified that the nightstand was approximately six to seven feet away from where he arrested Gothard, which was sufficiently within her immediate control. *See People v. Clouse,* 859 P.2d 228, 234–35 (Colo.App.1992) (cited with approval by *Syrie,* 101 P.3d at 222) (holding that items found under the bed in a twelve- by fifteen-foot motel room were within the wingspan of the defendant even though he was already handcuffed). Furthermore, Deputy Kelsay testified that after he arrested the defendant, he went over to the nightstand and found the drug paraphernalia in the drawer. Based on this testimony, the trial court concluded that "at that juncture [when Gothard was being taken into custody] ... there was a continuing and ongoing search of the nightstand which led to the seizure of [the drug paraphernalia] from the drawer." Although the record is not entirely clear on the progression of these events, the evidence sufficiently supports the trial court's finding that the search of the nightstand drawer was conducted during or immediately after Gothard's arrest. *See Hufnagel,* 745 P.2d at 246 (noting that it would be "unwise and highly artificial to make the validity of a search incident to an arrest turn on such a fine point of timing"). Consequently, we conclude that the drug paraphernalia was properly seized incident to Gothard's arrest. Accordingly, we reverse the trial court's order suppressing the evidence.

## III.

Because the methamphetamine was in plain view of the officer, who had lawfully entered Gothard's motel room under exigent circumstances, and because the officer was authorized to seize the drug paraphernalia incident to Gothard's arrest, we reverse the

trial court's suppression order of the meth-
amphetamine and drug paraphernalia.