**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**John Martin SHOVER, Defendant–Appellant.**

No. 07CA0187.

Colorado Court of Appeals, Div. IV.

Feb. 19, 2009.

John W. Suthers, Attorney General, Katherine A. Hansen, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge WEBB.

Defendant, John Martin Shover, appeals the judgment of conviction entered on jury verdicts finding him guilty of possession of chemicals or supplies to manufacture methamphetamine, section 18–18–405(1), (2)(a)(I)(A), C.R.S.2008, and possession of a precursor for methamphetamine, section 18–18–412.5, C.R.S.2008.

We conclude that Shover's suppression motion was properly denied because the chemicals seized from a room in Shover's residence were in plain view of an officer who entered the residence with the consent of Shover's wife to search the entire premises, despite Shover's earlier efforts to exclude her from that room. We discern no abuse of the trial court's considerable discretion in denying Shover's challenges for cause. Therefore, we affirm.

## I. Warrantless Search and Seizure

Shover first contends the trial court should have suppressed the chemicals seized without a warrant from a room in their residence that he had padlocked and told his wife not to enter, because she had neither actual nor apparent authority to consent to a search of this room, and because exigent circumstances were not established. We conclude that the first officer properly relied on the wife's consent to enter the residence and proceed to the doorway of this room, where the chemicals were in his plain view, and that because she was a co-owner or co-tenant, he could have entered the room to effect a warrantless seizure without exigent circumstances.

### A. Scope of Review

■ Review of a trial court's suppression order is a mixed question of law and fact. We defer to the trial court's findings of fact if those findings are supported by competent evidence in the record, but review the trial court's legal conclusions de novo. *People v. Gothard*, 185 P.3d 180, 183 (Colo.2008); *People v. Pitts*, 13 P.3d 1218, 1221–22 (Colo. 2000).

### B. Facts and Ruling Below

According to the officers' uncontroverted testimony at the suppression hearing, the wife called police because she suspected that Shover was manufacturing methamphetamine in a room in their house. When the first officer arrived, she let him in and escorted him to this room. She told the officer that she and Shover had been having marital problems; a few days before, Shover had padlocked the door to the room and instructed her not to enter it; she had pried the lock off before the officer arrived; and she felt she had a right to be anywhere in the house, including the room.

The wife went into the room and opened the lid to a cooler. From the doorway, the officer could then see bottles he thought contained red devil lye and hydrogen perox-

ide. He also saw a scale and some glass tubing. Based on his experience, he concluded that the items were involved in manufacturing methamphetamine and radioed for assistance from an officer in the narcotics unit.

When the narcotics officer arrived, he went into the house and from the hallway adjacent to the room saw a one-gallon jug labeled "Muriatic Acid" and the bottle of red devil lye. He concluded that the room was being used to manufacture methamphetamine and evacuated the house because the chemicals were flammable.

Although a warrant was not obtained, other officers arrived, processed the scene as a meth lab, and seized the chemicals and equipment. Neither officer testified that the wife had separately consented to the seizure.

The trial court found that the wife was not acting as an agent of the police officers; she, not the officers, had pried open the door and opened the cooler; she had authority to consent to the search because she was a co-owner or co-tenant of the house; Shover could not limit her authority to access any part of it; and both officers observed the chemicals in plain view from the hallway. Without addressing exigent circumstances, the court denied the motion to suppress because the officers were validly in the home based on the wife's consent and they observed the chemicals in plain view.

### C. Law

■ "[W]arrantless searches and seizures are presumptively invalid under the Fourth Amendment to the U.S. Constitution and article II, section 7 of the Colorado Constitution unless justified by an established exception to the warrant requirement." *Gothard,* 185 P.3d at 183.

■ The discovery of evidence in plain view of an officer who is validly on the premises is not a warrantless search implicating the Fourth Amendment. *See People v. Kluhsman,* 980 P.2d 529, 534 n. 5 (Colo.1999). However, the warrantless seizure of such evidence violates the Fourth Amendment unless it falls within a recognized exception to the warrant requirement. One such exception is the plain view doctrine, which allows

police to seize, without a warrant, evidence that is plainly visible, so long as: (1) the initial police intrusion onto the premises was legitimate; (2) the police had a reasonable belief that the evidence was incriminating; and (3) the police had a right of access to the evidence. *Gothard,* 185 P.3d at 183; *see also Kluhsman,* 980 P.2d at 534.

■ The difference between the first requirement and the third requirement is "that the former refers to where the officer stands when she sees the item, and the latter to where she must be to retrieve the item." *Boone v. Spurgess,* 385 F.3d 923, 928 (6th Cir.2004). Separate analysis of the third requirement arises "in situations such as when an officer on the street sees an object through the window of a house" because using the plain view doctrine to justify a warrantless seizure "would require a warrantless entry upon private premises." *United States v. Naugle,* 997 F.2d 819, 823 (10th Cir.1993). No reported Colorado plain view case has addressed this distinction.

■ "When the police are legitimately on the premises pursuant to a valid consent, they may seize incriminating evidence in plain view." *People v. Reynolds,* 672 P.2d 529, 532 (Colo.1983). However, a warrantless search conducted on the basis of consent is limited by the authority of the consenting party. *People v. White,* 64 P.3d 864, 872 (Colo.App.2002). Thus, plain view does not justify seizure of items if, as Shover argues here, the officers went beyond the wife's authority. *People v. Roark,* 643 P.2d 756, 770 (Colo.1982).

■ "[W]here an individual shares with others common authority over premises or property, he has no right to prevent a search in the face of the knowing and voluntary consent of a co-occupant with equal authority." *People v. Sanders,* 904 P.2d 1311, 1315 (Colo.1995); *see also People v. Savage,* 630 P.2d 1070, 1073 (Colo.1981) (generally, any co-habitant has the right to consent to a search in his own right because the others assume the risk that any one of them might so consent, citing *United States v. Matlock,* 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)).

For purposes of third-party consent, actual and apparent authority "are not intended to imply the particularized meanings . . . as developed in the law of agency." *People v. Hopkins*, 870 P.2d 478, 480 n. 3 (Colo.1994). Rather, courts use these phrases "to differentiate between situations in which a consenting party actually possesses common authority over property from situations in which it reasonably appears, based on all the surrounding circumstances, that the consenter has such authority though, in fact, he does not." *Id.* Such a search "does not violate the Fourth Amendment because it is not unreasonable." *White*, 64 P.3d at 872.

Numerous cases uphold a search of marital premises based on the consent of one spouse. *Compare People v. Payne*, 839 P.2d 468, 469 (Colo.App.1992) (wife could validly consent to search of home she shared with husband notwithstanding that she had recently moved out and husband had changed the locks) (collecting state cases), *with Moore v. Andreno*, 505 F.3d 203, 210–11 (2d Cir.2007) (consenting girlfriend "had no common authority over the area as she and [the nonconsenting owner] were not married and did not share ownership of the house") (collecting federal cases).

Shover's reliance on *Georgia v. Randolph*, 547 U.S. 103, 120, 126 S.Ct. 1515, 164 L.Ed.2d 208 (2006) (holding "a warrantless search of a shared dwelling for evidence over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident"), is misplaced because he was not present when the wife consented. *See People v. Miller*, 143 P.3d 1195, 1196 (Colo.App.2006) (following *Randolph* where the defendant was present and objected). Shover cites no case, nor have we found one, applying *Randolph* unless the nonconsenting occupant was both present and expressly objected to the search.

The following statements by the *Randolph* majority indicate that its holding applies only in those circumstances:

- "[T]he potential objector, nearby but not invited to take part in the threshold colloquy, loses out." 547 U.S. at 121, 126 S.Ct. 1515.

- "[T]here is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." *Id.* at 121–22[, 126 S.Ct. 1515].

- "[I]t would needlessly limit the capacity of the police to respond to ostensibly legitimate opportunities in the field if we were to hold that reasonableness required the police to take affirmative steps to find a potentially objecting co-tenant before acting on the permission they had already received." *Id.* at 122[, 126 S.Ct. 1515].

- "The pragmatic decision to accept the simplicity of this line is, moreover, supported by the substantial number of instances in which suspects who are asked for permission to search actually consent, albeit imprudently. . . ." *Id.* (footnote omitted).

Further, Justice Breyer joined the 5–4 majority with the express reservation that the opinion was "case specific" and "does not apply where the objector is not present and 'object[ing].'" *Id.* at 126–27, 126 S.Ct. 1515.

### D. Analysis

First, with respect to discovery of the chemicals, Shover does not dispute that his wife's consent to the police entry into the house was valid. Because the record supports the court's finding that the officers observed the chemicals in plain view from the hallway where they had a right to be based on that consent, we conclude the officers' discovery of the chemicals was not a prohibited warrantless search. *See Kluhsman*, 980 P.2d at 534.

Second, with respect to the seizure of the chemicals, Shover also does not dispute that the officers had a reasonable belief the chemicals were incriminating. Hence, we address only the third requirement of the plain view doctrine—whether they had a right of access to the chemicals. Again, because the record supports the trial court's finding that Shover and his wife were joint

owners of the residence, we further conclude the court correctly determined they enjoyed equal rights of possession. *See Randolph*, 547 U.S. at 114, 126 S.Ct. 1515 (as between spouses, "there is no societal understanding of superior and inferior, a fact reflected in a standard formulation of domestic property law," citing 7 R. Powell, *Powell on Real Property* § 50.03[1], at 50–14 (M. Wolf gen. ed.2005) ).

The *Randolph* majority pointed out that "[t]he constant element in assessing Fourth Amendment reasonableness in the consent cases, then, is the great significance given to widely shared social expectations, which are naturally enough influenced by the law of property, but not controlled by its rules." 547 U.S. at 111, 126 S.Ct. 1515. Thus, the padlock Shover installed a few days before the search is less important than the "commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interests." *Id.* The first officer's reliance on the wife's invitation to enter the residence reflected the societal "understand[ing] that any one [co-owner or co-tenant] may admit visitors, with the consequences that a guest obnoxious to one may nevertheless be admitted in his absence by another," and the chance of a contrary arrangement "is too remote to expect visitors to investigate a particular household's rules before accepting an invitation to come in." *Id.* at 111–12, 126 S.Ct. 1515. Hence, applying the exclusionary rule here would not further its purpose of deterring police misconduct. *White*, 64 P.3d at 872.

The *Randolph* majority further recognized that "[i]t is also easy to imagine different facts on which, if known, no common authority could sensibly be suspected." 547 U.S. at 112, 126 S.Ct. 1515. The examples—a landlord or a hotel manager—"call[ ] up no customary understanding of authority to admit guests without the consent of the current occupant." *Id.* Here, in contrast, the wife's explanation that Shover had no right to exclude her from any portion of the residence reflects societal expectations concerning spousal authority over the marital residence.

Therefore, the overall circumstances did not put the first officer in the position of "a caller standing at the door of shared premises [who] would have no confidence that one occupant's invitation was a sufficiently good reason to enter when a fellow tenant stood there saying 'stay out.' " *Id.* at 113, 126 S.Ct. 1515. Nor is the wife's situation like that of the babysitter in *People v. Walter*, 890 P.2d 240, 243 (Colo.App.1994), who may have been able to invite police into the home but had no indicia of authority to consent to a search of the defendant's bedroom.

■ In sum, like the *Randolph* majority, "we have to admit that we are drawing a fine line," *id.* at 121, 126 S.Ct. 1515, in declining to equate the first officer's knowledge of the padlock and Shover's instruction that his wife was not to enter the room with the physically present and objecting husband in *Randolph*. But we uphold the wife's consent for the following three reasons.

First, the padlock and related instruction to his wife expressly denied her access, but do not resolve whether, if present, Shover would have denied the police access. Second, requiring presence and express denial creates clarity that relieves the police of any burden to contact absent co-owners. Third, we have no reason to conclude that requiring the police to seek out Shover and invite a refusal would have made a difference. *Id.* at 122 n. 9, 126 S.Ct. 1515 (citing secondary authority on the frequency of consents to search).

Having agreed with the trial court that the wife's consent to search included the padlocked room, we need not address Shover's alternative argument that the police lacked exigent circumstances to justify a warrantless seizure. On recognizing the chemicals as incriminating evidence, a point which Shover does not dispute, either officer could have entered the room and seized them.

Accordingly, we conclude that the trial court properly denied Shover's motion to suppress.

## II. Juror Challenges

Shover also contends the trial court abused its discretion in denying his challenges for cause to three prospective jurors. We discern no error.

## A. Scope of Review

■ We review a trial court's ruling on a challenge for cause for an abuse of discretion, and accord great deference to a trial court's handling of such challenges, recognizing its unique role and perspective in evaluating the prospective juror's credibility, demeanor, and sincerity. *Morrison v. People,* 19 P.3d 668, 672 (Colo.2000); *Carrillo v. People,* 974 P.2d 478, 485–86 (Colo.1999). That discretion extends to the court's evaluation of inconsistent or self-contradictory statements of prospective jurors. *People v. Cevallos-Acosta,* 140 P.3d 116, 121 (Colo.App.2005).

## B. Facts

Three prospective jurors expressed negative feelings about methamphetamine use based on their personal experiences and concerns that they might not be able to separate their feelings from the facts of this case. Shover excused two of them with peremptory challenges, exhausted his remaining peremptory challenges, and left the third on the jury.

Prospective jurors L and S 1 both stated that they had family members who were addicted to methamphetamine; it would be hard for them to separate their personal feelings from this case; and if they were in Shover's place, they would not want themselves on the jury.

Juror S2 expressed concerns over her ability to be impartial based on her sister's job with a chemical removal company dismantling meth labs, and her own experience of witnessing a house close to her home set on fire by a meth lab.

When defense counsel finished voir dire, the court inquired of the entire panel whether they could separate their personal feelings and experiences from the facts of this case and give Shover a fair trial:

> The issue here isn't really whether we approve of drug use or drug manufacturing. We all agree that we don't, it's against the law, and that's why we are here. The question is can this Defendant get a fair trial on, one, whether any such thing happened, and, two, whether he did anything.

The court also used a hypothetical scenario about a person charged with improperly making a United States flag and asked the panel if they could mentally separate what the person was charged with from what he or she did.

In response, Juror L stated: "Sure. I can do the separation in my mind, prove he had it with intent to distribute [sic], sure." And, when the court asked if he understood that defendant did not have to prove anything, Juror L responded, "Right."

Next, the court asked Juror S1 if she understood that the burden in the case rested entirely on the prosecution and whether she could separate her distaste for illegal drugs from the crimes Shover was charged with and be fair. She responded affirmatively.

Then the court asked Juror S2 if she, too, could "make that separation." She indicated that she would be able to do that.

## C. Law

■ Unless the court is satisfied that a prospective juror will render an impartial verdict based solely on the evidence and instructions, a trial court must grant a challenge for cause if the prospective juror manifests a bias for or against the defendant, for or against the prosecution, or acknowledges a previously formed or expressed opinion regarding the guilt or innocence of the defendant. *Morrison,* 19 P.3d at 672. However, the mere expression of some concern by a prospective juror regarding a certain aspect or issue of a case should not result in automatic dismissal for cause. *People v. Arko,* 159 P.3d 713, 720 (Colo.App.2006), *rev'd on other grounds,* 183 P.3d 555 (Colo.2008); *People v. Ward,* 673 P.2d 47, 49 (Colo.App. 1983).

■ A commitment to try to put one's biases aside has been deemed sufficient, as long as the juror expresses a belief that he or she can be fair. *People v. Woellhaf,* 87 P.3d 142, 151 (Colo.App.2003), *rev'd on other grounds,* 105 P.3d 209 (Colo.2005). A trial court is entitled to give considerable weight to the prospective juror's assurances that he

or she can be fair and impartial. *People v. Sandoval*, 733 P.2d 319, 321 (Colo.1987).

### D. Application

The record does not show that the trial court abused its discretion in relying on these prospective jurors' assurances that they could separate their feelings from the case and hold the prosecution to its burden of proof. *People v. Valdez*, 183 P.3d 720, 725 (Colo.App.2008) (although jurors' responses indicated some doubt about ability to be impartial and follow instructions, trial court did not abuse its discretion by denying challenge for cause); *Woellhaf*, 87 P.3d at 151 (deferential abuse of discretion standard discourages an appellate court from second-guessing a trial court's evaluation of a prospective juror's body language and inflection). Although the last colloquy with Juror S2 was brief and the court did not ask her if she could be fair, she had not stated that she would be unable to render an impartial verdict based only on the evidence. Hence, we decline to substitute our judgment for that of the trial court, which apparently believed that she could separate her feelings from the facts of this case based on her response.

Two of the prospective jurors' statements that in Shover's position they would not want persons such as themselves on the jury, do not require a different result. *See Carrillo*, 974 P.2d at 486–87 (a prospective juror's statement that she would not want someone like her on a jury if she were in defendant's position does not preclude jury service).

The judgment is affirmed.

Judge ROY and Judge HAWTHORNE concur.