The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Frank Paul ALAMENO, Defendant–Appellee.

No. 08SA113.

Supreme Court of Colorado, En Banc.

Oct. 6, 2008.

Martin C. Beeson, District Attorney, Glenwood Springs, Colorado, Attorney for Plaintiff–Appellant.

Brown and Wills LLP, H. Lawson Wills, Glenwood Springs, Colorado, Attorneys for Defendant–Appellee.

Justice RICE delivered the Opinion of the Court.

The People appeal the suppression of certain evidence discovered during a search of defendant Frank Paul Alameno's residence pursuant to two search warrants. Alameno has been charged with a total of thirty-nine counts of ten different charges, including twenty-seven counts related to the sexual exploitation of a child, six counts related to

controlled substances, one count of cruelty to animals, and one count of promotion of obscenity.[1] We reverse the trial court's suppression of the seized evidence. We hold that while the evidence at issue was not discovered pursuant to a valid warrant, the evidence is nonetheless admissible under the plain view exception to the warrant requirement.

## I. Facts and Procedural History

On September 12, 2006, several women with connections to Alameno went to the Rifle Police Department to speak to an officer about Alameno. Present at the police department were LaMonica Lucchesi, the wife of Alameno's stepson; Stacy Church, whom the trial court identified as "Defendant's 'daughter,' although not by blood"; and Teresa Hill, Church's best friend. The women, along with other family and friends, hoped to conduct an intervention for Alameno because they were concerned about his drug use and addiction to pornography. According to Lucchesi's witness statement, the group decided that Alameno had too many guns and would be dangerous to confront, so they sought to use a police escort during the intervention. In addition, the group was concerned that, if confronted, Alameno would destroy his computer and the evidence contained within it. However, the Rifle Police Department told the women that they could not assist in a family intervention or provide a police escort.

At some point, Lucchesi also told an officer at the Rifle Police Department that she was concerned that Alameno might be involved in child pornography. Because the alleged crime occurred outside of the jurisdiction of Rifle Police, an officer contacted Deputy Evan Mead of the Garfield County Sheriff's Office and gave him Lucchesi's phone number. Deputy Mead called Lucchesi and she reiterated her concern about child pornography.

That same day, Lucchesi, Church, and Hill went to Alameno's house and let themselves in. They testified that Lucchesi and Church had implicit permission from Alameno's wife to be in the home whenever they wanted. Church went through Alameno's desk and found a pair of panties. She took a photograph of them, which she later gave to Deputy Mead. Hill accessed Alameno's computer and found child pornography. She downloaded several photographs of child pornography onto three floppy disks to give to Deputy Mead.

According to Deputy Mead's report,[2] Lucchesi said that when she was at the residence, she "inadvertently discovered 2 pairs of her daughters [sic] panties located in the drawer of a desk" belonging to Alameno. She said that the drawer contained a third pair of underwear, but she did not know to whom they belonged. Lucchesi also told Deputy Mead that Alameno often took the keyboard to his computer with him when he left the house. In addition, she said that she intended to go back to the residence to see if she could find anything else suspicious. Finally, Officer Mead's report states that Lucchesi told him that she believed Alameno regularly used methamphetamine and that he stored it in his residence.

The sheriff's office examined the photographs on the floppy disks and discovered pictures of girls as young as age three in various states of undress, including one of a three- or four-year-old girl engaging in a sex

---

1. Specifically, Alameno has been charged with the following: two counts of possession of more than one gram of a schedule II controlled substance under section 18–18–405, C.R.S. (2008); one count of unlawful use of a schedule II controlled substance under section 18–18–404, C.R.S. (2008); one count of tampering with physical evidence by destruction under section 18–8–610, C.R.S. (2008); twenty-five counts of sexual exploitation of a child under section 18–6–403(3)(b.5), (5), C.R.S. (2008); one count of sexual exploitation of a child under section 18–6–403(3)(a); one count of sexual exploitation of a child under section 18–6–403(3)(b); three counts

of inducing consumption of controlled substances by fraudulent means under section 18–5–116, C.R.S. (2009); three counts of assault in the second degree under section 18–3–203(1)(e), C.R.S. (2008); one count of cruelty to animals under section 18–9–202(1)(a), C.R.S. (2008); and one count of promotion of obscenity under section 18–7–102(2)(a)(II), C.R.S. (2008).

2. The report is ambiguous on its face as to its author, but the context of the report and findings by the trial court indicate that Deputy Mead wrote it.

act with an adult male. Based on this evidence, the officers obtained a search warrant on September 13, 2006, which was executed that day.

Detective Don Breier signed the affidavit for the September 13 search warrant, which included most of the information detailed above. Specifically, the affidavit mentioned the three pairs of underwear found by Lucchesi, the allegation that Alameno regularly took his computer keyboard with him when he left the residence, and the indication by Lucchesi that Alameno was using methamphetamine regularly. Additionally, it detailed the types of images found on the disks provided by Lucchesi and mentioned voluntary written witness statements from Lucchesi, Church, and Hill.

Furthermore, the affidavit stated that on September 13, 2006 (the day the warrant was issued), Lucchesi informed Detective Breier that Alameno's wife had confronted Alameno about images on the computer, and Alameno had since removed the computer and secreted it away somewhere within five minutes' walking distance from the house. In addition, it stated that Lucchesi's husband informed Detective Breier that there was a crawl space near an unfinished closet in the master bedroom where he had previously observed pornography stored in boxes.

Before presenting the affidavit to a judge, Detective Breier had the affidavit reviewed by the District Attorney. On September 13, 2006, the judge signed the warrant authorizing the search of Alameno's residence.

The warrant echoed much of the language used in the affidavit, and it authorized a search for the desktop computer with the specific serial number believed to belong to Alameno, and "any computer storage media including but not limited to hard drives, CD's, DVD's, floppy disks, memory sticks or memory based storage devices, and tapes that may possibly contain or have stored child pornography." It went on to authorize a search for "any actual pornography to be searched specifically for child pornography, and any photos or images which may portray

illicit or child pornography." Additionally, the warrant authorized a search for narcotics or narcotics equipment, as well as "any plain view evidence of any other criminal activity." However, the People now concede that there was not probable cause to search for narcotics-related evidence. The warrant directed that the search take place at Alameno's address "within a residential structure or its outbuilding, garages or curtilage."

The search turned up a significant amount of evidence, much of which Alameno had suppressed after an evidentiary hearing. At issue here, police found some drug-related items in the master bathroom, including a pocket balance scale, a blue glass case with 2.1 grams of methamphetamine, a snort tube with residue, empty plastic baggies, a plastic bag with a crystalline substance, and a plastic fuse container with a razor blade. In addition, both the garage and crawl space contained pornography and videos, which the People contend support the charges for promotion of obscenity and cruelty to animals. The garage and crawl space pornography did not include child pornography, but nothing in the record describes this pornography with any further specificity.

In addition, police obtained a second warrant on September 20, 2006, to search the contents of Alameno's computer. The evidence obtained pursuant to that warrant is not at issue here.

Police filed the charges against Alameno based on the evidence found in and around his residence. Alameno moved to suppress the evidence seized, and the trial court conducted a hearing on that motion. In its written order, the trial court suppressed all evidence of drugs and drug paraphernalia found in the master bathroom, and all pornography found in the crawl space and garage.[3] It ruled that the warrants did not validly authorize a search for this evidence and that no exception to the warrant requirement applied.

---

3. Additional evidence, which we do not consider here, was also suppressed. The additional evidence does not support any of the charges against Alameno, and any issues related to the suppression of that evidence are therefore moot.

## II. Standard of Review

■ The issue before an appellate court in a suppression case is one of mixed law and fact. *People v. Arias,* 159 P.3d 134, 137 (Colo.2007). Hence, we defer to the trial court's factual findings so long as there is sufficient evidence in the record to support those findings, but we review the trial court's legal conclusions de novo. *People v. Arroya,* 988 P.2d 1124, 1129 (Colo.1999).

## III. Analysis

### A. Narcotics–Related Evidence from Bathroom

■ In suppressing the narcotics-related evidence found in the bathroom, the trial court first determined that the provision of the warrant permitting a search for narcotics-related evidence was invalid. Then, the court held that there was no exception to the warrant requirement that would allow the evidence to come in. Upon review, we agree with the trial court that the warrant was invalid to the extent that it permitted a search for narcotics-related evidence. However, we reverse the trial court's determination that no exception to the warrant requirement applies. Rather, we hold that the evidence is admissible under the plain view exception.

■ For a search warrant to be valid under the Constitution, it must contain a showing of probable cause supported by oath or affirmations particularly describing the place to be searched and the things to be seized. *See* U.S. Const. amend. IV. In this case, the trial court found that the affidavit supporting the warrant did not provide probable cause to believe that narcotics-related evidence would be found in or around Alameno's residence. The People do not contest this finding.

We agree that the warrant lacked probable cause to search for narcotics-related evidence. The affidavit supporting the warrant suggested that Lucchesi believed that Alameno "uses/consumes methamphetamine on a regular basis," and that she and others believed that he was "using methamphetamine

and stor[ing] methamphetamine within his residence." It did not indicate the basis for these beliefs. Suspicion of drug use alone does not give rise to probable cause. *See People v. McCoy,* 870 P.2d 1231, 1235 (Colo. 1994) (distinguishing "mere suspicion" from probable cause). Therefore, we agree that the warrant was invalid to the extent that it authorized a search for narcotics-related evidence.

■ However, evidence that is not supported by a valid search warrant may still be admissible if it falls under one of several exceptions to the warrant requirement, such as the plain view exception. *See People v. Pitts,* 13 P.3d 1218, 1222 (Colo.2000) (noting that a search that is made without a valid warrant is presumed unreasonable unless justified by an established exception to the warrant requirement and describing the plain view exception). The plain view exception to the warrant requirement recognizes that police officers are not required to close their eyes to evidence that they see while conducting an otherwise proper search. *Id.*

■ In order to fall within the plain view exception, plainly visible evidence must meet three requirements. First, the initial intrusion by the police must be legitimate. *Id.* Second, the police must have had a lawful right of access to the object seized. *Id.* Last, the police must have had a reasonable belief that the evidence seized was incriminating. *Id.* This final requirement is met if the incriminating nature was "immediately apparent" to the officer, which means that the officer had probable cause to associate the item with criminal activity without conducting a further search. *Id.*

We hold that the People satisfied each requirement of the plain view exception in this case. Preliminarily, we note that the narcotics and narcotics equipment were plainly visible to the officers during the course of their search. The officers were authorized to search for electronic storage media, including media smaller than the size of a penny, and anything they came upon while searching for this evidence was in plain view.[4]

---

**4.** Again, we note that the trial court found that    the evidence was in the medicine cabinet, though

The first requirement that the initial intrusion be legitimate was met in this case because the warrant authorized a search of the residence, and the bathroom was within that residence. The officers also satisfied the second prong of the plain view test, which requires the officers to have a lawful right of access to the object seized; anywhere that the officers could find narcotics or narcotics equipment they could also find storage media. Last, the officers had a reasonable belief that the evidence seized was incriminating because no further search would be required to associate the drugs and drug equipment with criminal activity. Because we hold that the plain view exception applies, we reverse the trial court's order suppressing the evidence.

### B. Pornography from Crawl Space and Garage

The trial court also suppressed pornography that was found in a crawl space and in Alameno's garage. The evidence in question is adult pornography that the People contend is illegal, forming the basis for the charges for promotion of obscenity and cruelty to animals. In suppressing the evidence, the trial court first invalidated the September 13 warrant to the extent that it allowed a search for "actual pornography to be searched specifically for child pornography." The trial court held that, while there was probable cause to search for child pornography, there was no probable cause to search for "actual pornography," interpreted to mean illegal adult pornography. It further held that the garage and crawl space pornography could not be admitted under an exception to the warrant requirement. We reverse the trial court, holding that the pornography that the People allege supports the charges of promotion of obscenity and cruelty to animals is admissible under the plain view exception to the warrant requirement.

The trial court interpreted the phrase "actual pornography" in the September 13 warrant "to mean illegal pornography, not adult pornography [that] is not illegal." In other words, the court interpreted this portion of

the warrant to ostensibly authorize a search for illegal adult pornography. The court then held that this portion of the warrant was invalid because there was insufficient cause in the affidavit to believe that there was illegal adult pornography in the places to be searched. The court then found that no exception to the warrant requirement existed with respect to the pornography found in the garage and crawl space.

We agree with the trial court that the warrant did not authorize a search for illegal adult pornography, however we reach that conclusion using different reasoning. We disagree with the trial court's interpretation of the phrase "actual pornography." While the trial court asserted that the phrase was intended to distinguish between illegal and legal adult pornography, the context of the warrant leads us to believe that the phrase was intended to distinguish between pornography contained on storage media and pornography that was non-electronic, such as pornographic magazines and photographs. The affidavit supporting the warrant requested a search for the following:

> Any computer storage media . . . that may possibly contain or have stored child pornography. Furthermore any actual pornography to be searched specifically for child pornography and any photos or images which may portray illicit or child pornography.

The warrant quotes this language almost verbatim.

From this language, we conclude that the warrant was intended to authorize a search through any non-electronic pornography, including legal and illegal adult pornography, for the limited purpose of allowing officers to find any child pornography that may be mixed in with it. In other words, while the warrant validly authorized a search through all types of pornography to locate child pornography, it did not authorize a search for adult pornography itself. Thus, we agree with the trial court that officers were not authorized to search for the type of evidence at issue here—adult pornography that is supportive of charges for promotion of obscenity

the People contest this finding. Because the storage media could have been hidden in the

medicine cabinet, the evidence was in plain view even if the officers found it in the cabinet.

and cruelty to animals. Therefore, the pornography at issue must be suppressed unless one of the exceptions to the warrant requirement applies.

We reverse the trial court's holding that no such exception to the warrant requirement applies and conclude instead that the pornography that is supportive of charges for promotion of obscenity and cruelty to animals is admissible under the plain view exception. Each of the elements of the plain view exception is present here. First, the initial intrusion by the police was legitimate because the warrant authorized the officers to look through all pornography, be it adult, child, legal, or illegal, in an attempt to find child pornography. *See Pitts,* 13 P.3d at 1222. In addition, the warrant gave the officers a lawful right of access to all pornography. *See id.* Last, the officers had a reasonable belief that the evidence seized was incriminating. *See id.* The officers looking at the pornography had probable cause to associate it with criminal activity, namely promotion of obscenity and cruelty to animals, because the content of pornography is generally apparent on its face. *See id.* Because the plain view exception applies to this evidence, we reverse the trial court's order suppressing the evidence.

### IV.   Conclusion

We conclude that the September 13 warrant failed to support a search for the narcotics-related evidence found in the bathroom or the pornography found in the garage and crawl space. However, we reverse the trial court's holding that no exception to the warrant requirement applies to this evidence. Rather, we hold that the plain view exception supports the admissibility of both sets of evidence. Thus, we reverse the trial court and remand the case for further proceedings based on this holding.