Opinion by JUDGE DUNN.
¶ 1 Defendant, Kathy Lynn Jauch, appeals the judgment of conviction entered on jury verdicts finding her guilty of five criminal charges. We affirm.
I. Background
¶ 2 The victim's backpack was stolen from the parking lot in front of his workplace. It contained, among other things, a computer and a credit card. The credit card was used at a gas station shortly after it was stolen, and a woman who police later identified as Jauch was observed attempting to use the credit card to order food from a restaurant.
¶ 3 Jauch was charged with theft, two counts of identity theft, and two counts of unauthorized use of a financial transaction device. Prior to trial, she filed a motion to dismiss the two identity theft counts, arguing they violated her right to equal protection. The district court denied the motion.
¶ 4 The jury convicted Jauch of one count of theft, two counts of identity theft, and two counts of unauthorized use of a financial transaction device. The district court merged the unauthorized use counts with the identity theft counts. Jauch was sentenced to three years of probation, with six months in jail as a condition of probation.
¶ 5 Jauch contends that the trial court erred in (1) denying her motion to dismiss the identity theft charges on equal protection grounds, and (2) admitting a turquoise shirt that police discovered when searching her house. We address, and reject, each contention.
II. Equal Protection
¶ 6 Jauch first contends that the identity theft statute imposes a harsher penalty for the same conduct proscribed by the unauthorized use of a financial transaction device statute, and therefore, her identity theft conviction violates her equal protection rights.[1] We disagree.
A. Standard of Review and Governing Law
¶ 7 We review constitutional challenges to statutes de novo. Hinojos-Mendoza v. People , 169 P.3d 662, 668 (Colo.2007). Statutes are presumed to be constitutional, and the party challenging the constitutionality of a statute has the burden of proving that it is unconstitutional beyond a reasonable doubt. Id.
¶ 8 While the Supreme Court has held that equal protection under the United States Constitution is not violated where statutes impose different penalties for the same criminal conduct, *57 United States v. Batchelder, 442 U.S. 114, 124-26, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979), Colorado takes a stricter view of the protections afforded by its equal protection guarantee. Stewart, 55 P.3d at 114.
¶ 9 Under the Colorado Constitution, equal protection is violated if different statutes prohibit the same criminal conduct but impose different penalties. E.g., People v. Bossert, 722 P.2d 998, 1003 (Colo.1986). In considering equal protection challenges, the supreme court has emphasized that equal protection is offended only when statutes forbid identical conduct. Stewart, 55 P.3d at 114 ; see also People v. Westrum, 624 P.2d 1302, 1303 (Colo.1981) ("[I]t is only where the same criminal conduct is proscribed in both statutes that equal protection problems arise."). To determine whether two statutes proscribe identical conduct, we examine the elements of each crime. Stewart, 55 P.3d at 115. If reasonable distinctions can be drawn between the statutes, there is no equal protection violation. Westrum, 624 P.2d at 1303.
¶ 10 Statutory classifications of crimes do not violate equal protection if the differences between the proscribed conduct are both real in fact and reasonably related to the general purposes of criminal legislation. Campbell v. People, 73 P.3d 11, 12 (Colo.2003). The General Assembly is free to establish more severe penalties for conduct that it believes has graver consequences, even if the conduct varies only by a matter of degree. Id. at 12-13. Thus, "[a] single act may violate more than one criminal statute without violating the equal protection guarantee." Id. (citing Stewart, 55 P.3d at 114 ; People v. Cagle, 751 P.2d 614, 619 (Colo.1988) ).
B. Analysis
¶ 11 At the time of Jauch's offense, the identity theft statute provided, in pertinent part, "A person commits identity theft if he or she [k]nowingly uses the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority with the intent to obtain cash, credit, property, services, or any other thing of value to make a financial payment." Ch. 326, sec. 1, § 18-5-902(1)(a), 2009 Colo. Sess. Laws 1737. Identity theft is a class four felony. § 18-5-902(2), C.R.S.2012.
¶ 12 The unauthorized use of a financial transaction device statute provides, in relevant part:
(1) A person commits unauthorized use of a financial transaction device if he uses such device for the purpose of obtaining cash, credit, property, or services or for making financial payment, with intent to defraud, and with notice that either:
(a) The financial transaction device has expired, has been revoked, or has been cancelled; or
For any reason his use of the financial transaction device is unauthorized either by the issuer thereof or by the account holder.
§ 18-5-702(1)(a), (b), C.R.S.2012. Where, as here, the value of the property obtained is less than one thousand dollars, unauthorized use of a financial transaction device is a class one misdemeanor. § 18-5-702(3)(b), C.R.S.2012.
¶ 13 Comparing the elements of the two statutes, we conclude that they do not prohibit identical conduct. Rather, they address different, though related, conduct. The identity theft statute expressly prohibits knowingly using the identifying information or financial device "of another." Ch. 326, sec. 1, § 18-5-902(1)(a), 2009 Colo. Sess. Laws 1737; see also People v. Perez, 2013 COA 65, ¶ 18, --- P.3d ---- (mental state of knowingly "applies to the element concerning the personal identifying information 'of another' "). "Of another" is defined as "that of a natural person, living or dead, or a business entity." § 18-5-901(11), C.R.S.2012. Therefore, to prove identity theft, the prosecution must show that a defendant knowingly used the identifying information or a financial device belonging to another person or entity.
¶ 14 By contrast, the unauthorized use statute requires no similar showing. Rather, that statute prohibits the unauthorized use of a financial transaction device. § 18-5-702(1), C.R.S.2012; see also People v. Pipkin, 762 P.2d 736, 737 (Colo.App.1988) ("The evidence adduced at trial was sufficient *58 to support an inference that defendant was not authorized to use the credit card; thus, the proof on [sic] this element of the crime was sufficient to support the verdict."). The statute further requires notice that the use of the device is unauthorized by either the issuer or the account holder. § 18-5-702(1). For purposes of this statute, an "account holder" is defined as "any person or business entity named on or associated with the account or named on the face of a financial device to whom or for whose benefit the financial device is issued by an issuer." § 18-5-901(1), C.R.S.2012. Thus, in order to prove that a defendant committed unauthorized use, the prosecution is not required to show that the financial device belonged to a separate individual or entity. Rather, under the plain language of the unauthorized use statute, the financial transaction device may belong to the perpetrator.
¶ 15 Thus, to convict Jauch of identity theft, the jury was required to find that the credit card belonged to the victim and not to Jauch. But the jury was not required to make such a finding in order to convict her of unauthorized use. We therefore conclude that Jauch's equal protection rights were not violated. See Mozee, 723 P.2d at 128 (rejecting equal protection challenge to first degree assault with a crime of violence sentence enhancer because "in order to prove first degree assault and crime of violence instead of second degree assault and crime of violence, the People must prove an additional element - that the use of the deadly weapon actually caused the serious bodily injury"); see also People v. OnesimoRomero , 746 P.2d 534, 538 (Colo.1987) (rejecting equal protection challenge because defendant violated a misdemeanor statute when he knowingly voted in the wrong precinct, but violated a felony statute when he provided false information upon registering to vote and then reaffirmed that information when he voted).
III. Seizure of the Turquoise Shirt
¶ 16 Jauch contends that the trial court erred in denying her motion to suppress a turquoise shirt found during the search of her home. She argues there was no probable cause to search for the shirt and that the court erred in concluding that the shirt was admissible under the plain view exception to the warrant requirement. We disagree.
A. The Search Warrant
¶ 17 After the victim reported the theft of his backpack, computer, and credit cards, Investigator Brian Bahl reviewed a surveillance tape of the theft. The tape showed a person exit a tan or beige flatbed truck and steal the backpack. Based on information provided by the victim, Investigator Bahl interviewed several witnesses who indicated that Jauch had a light colored flatbed truck and who placed her at a location where the victim's credit card was used.
¶ 18 After gathering this information, Investigator Bahl prepared an affidavit to obtain a search warrant for Jauch's home. The search warrant identified several items to be searched for, including a "turquoise V-neck shirt with ruffles." The affidavit, however, did not mention the shirt or the reason for seeking the turquoise shirt. A magistrate found probable cause to search Jauch's home and issued the warrant. During the search, the police found and seized a turquoise shirt.
¶ 19 The inclusion of the turquoise shirt in the warrant was based on Investigator Bahl's interview of a telephone store employee. The employee told him that the day the credit card was stolen, a woman who drove a "dirty white" flatbed truck came into the store and asked to use a telephone. The employee stated that the woman was wearing a turquoise, V-neck shirt with ruffles, and was holding a silver and blue credit card with a blue rag between her thumb and finger. The employee also told him that she heard the woman state on the phone, "It went through." According to the employee, the woman seemed surprised and also whispered, "Don't use my name." After the woman left, the employee hit redial on the phone, which connected her with a nearby restaurant.
¶ 20 Witnesses at the restaurant confirmed that an order for food was placed over the phone using the victim's credit card. After the phone order was placed, a restaurant employee told Investigator Bahl that Jauch, whom she knew, came into the restaurant to pick up food. When asked to produce a *59 credit card, Jauch denied placing an order. Witnesses at the restaurant confirmed that Jauch drove a tan or beige flatbed truck and provided Investigator Bahl with Jauch's address.
¶ 21 Although the affidavit in support of the search warrant did not mention the turquoise shirt, it relayed, in some detail, the circumstances surrounding the events at the phone store and the attempt to use the victim's credit card at the restaurant.
B. The Motion to Suppress
¶ 22 Jauch moved to suppress all evidence seized during the search. She argued that the warrant to search the residence was invalid because the affidavit in support of the search warrant lacked probable cause. After a hearing on the matter, the trial court ruled that the affidavit provided probable cause to search the residence for all of the items specified in the affidavit except the turquoise shirt. The court concluded that there was no indication "why any clothing would be seized" and therefore ruled that the turquoise shirt should be suppressed.
¶ 23 The prosecution filed a motion to reconsider, and argued that the turquoise shirt was admissible under the plain view doctrine. The trial court held a second hearing on the suppression of the shirt. At this hearing, Investigator Bahl testified that he was the lead investigator on the case. He then recounted the phone store employee's description of the turquoise shirt worn by the woman who entered the store holding a credit card with a rag.
¶ 24 With respect to the execution of the warrant, Investigator Bahl testified that he was present on the day of the search, and that he directed other investigators in executing the search. He testified that a deputy investigator, Officer Bliss, discovered the turquoise shirt in "the middle bedroom of the house," though he could not recall where in the room she discovered the shirt. He further testified that Officer Bliss called his attention to the shirt and held it up, and that he confirmed that the shirt matched the description of the shirt given to him by the phone store employee. Officer Bliss did not testify.
¶ 25 Based on this evidence, the prosecution argued that the shirt should be admitted under the plain view exception because the understanding of the police was sufficient to establish probable cause. The trial court granted the motion to reconsider and admitted the shirt based on the plain view exception to the warrant requirement.
C. Standard of Review
¶ 26 A trial court's order on a motion to suppress presents mixed questions of law and fact. People v. Pitts, 13 P.3d 1218, 1221-22 (Colo.2000). We defer to the trial court's findings of fact if supported by evidence in the record, but we review the trial court's conclusions of law de novo. Id.
D. Governing Law
¶ 27 The Fourth Amendment to the United States Constitution and article II, section seven of the Colorado Constitution protect against unreasonable searches and seizures. People v. McKinstrey, 852 P.2d 467, 470 (Colo.1993) ; see U.S. Const. amend. IV ; Colo. Const. art. II, § 7. The People bear the burden of proving that a search or seizure was reasonable. Pitts, 13 P.3d at 1222. A search without a valid warrant is presumptively unreasonable, unless the search falls under one of the time-honored exceptions to the warrant requirement. People v. Dumas, 955 P.2d 60, 62 (Colo.1998). The plain view doctrine is one such exception. Pitts, 13 P.3d at 1222.
¶ 28 The plain view doctrine is based on the proposition that officers are not required to close their eyes to incriminating evidence that is plainly visible to them when conducting a legitimate search. People v. Najjar, 984 P.2d 592, 596-97 (Colo.1999). Under the plain view doctrine, the police may seize an item that is plainly visible without a proper search warrant, so long as: (1) the initial intrusion by the police is legitimate, (2) the police have a lawful right of access to the object seized, and (3) the police have a reasonable belief that the evidence seized was incriminating. People v. Alameno, 193 P.3d 830, 834 (Colo.2008).
*60 E. Analysis
¶ 29 Jauch contends that the prosecution failed to prove that (1) the police had a lawful right of access to the shirt, and (2) Officer Bliss had a reasonable belief that the shirt was incriminating evidence. We are not persuaded.
1. Lawful Right of Access
¶ 30 Jauch argues that the police did not have a lawful right of access to the shirt. In particular, she argues that the prosecutor did not establish where the shirt was discovered, and therefore did not establish that it was found in a location within the scope of the search warrant. Jauch also argues that, when Officer Bliss moved the shirt, Bliss initiated a separate search which exceeded the scope of the search warrant.
¶ 31 Although Investigator Bahl's testimony at the suppression hearing did not disclose exactly where in the bedroom the turquoise shirt was found, the search warrant authorized officers to search the residence for, among other things, two black wallets, a credit card, personal checks bearing the victim's name, a blue rag, and credit card receipts. Jauch does not contest the search warrant's validity with regard to those items. Thus, the officers had a lawful right of access to Jauch's home and could lawfully search any location in the home that might contain these items. See Alameno, 193 P.3d at 835 (valid warrant gave officers a lawful right of access to search locations in home where the items described in the warrant could be found).
¶ 32 And any location or container that might contain the shirt might also contain the wallets, credit card, checks, rag, or receipts described in the warrant. Further, any of these items could have been discovered underneath or tucked within the shirt. Thus, based on the evidence presented, Bliss did not exceed the scope of the search warrant in discovering or moving the shirt. The record, therefore, supports the conclusion that the officers had a lawful right of access to the turquoise shirt. See id. (warrant to search for "electronic storage media" provided officers with a right of access to location of narcotics-related evidence, because "anywhere that the officers could find narcotics or narcotic equipment they could also find storage media"); see also Dumas, 955 P.2d at 63 (where police were given consent to search for drugs, they did not exceed the scope of consent by searching a checkbook and discovering forged checks because drugs can readily be hidden in small containers).
2. Reasonable Belief that the Evidence Was Incriminating
¶ 33 Jauch argues that Officer Bliss did not have a reasonable belief that the turquoise shirt was incriminating because, in seizing the shirt, Officer Bliss relied on the search warrant, which was invalid with regard to the shirt. We conclude that Officer Bliss could seize the shirt based on her fellow officer's reasonable belief that the shirt was connected to the criminal activity under investigation.
¶ 34 A police officer has a "reasonable belief" that evidence is incriminating if the incriminating nature of the object is "immediately apparent," meaning that the officer has probable cause to associate the item with criminal activity without conducting a further search. Dumas, 955 P.2d at 63-64. Probable cause means that the facts available to the officers would cause a person of reasonable caution to believe that certain items are contraband, fruits or instrumentalities of a crime, or are connected to the criminal activity being investigated. People v. Melgosa, 753 P.2d 221, 227 (Colo.1988) ; see also People v. Mascarenas, 972 P.2d 717, 721 (Colo.App.1998). An officer's belief that the object is evidence of a crime may be based on either the intrinsic nature of the article or the officer's "knowledge and experience as they relate to the facts presented in the particular case." People v. Waits, 196 Colo. 35, 40, 580 P.2d 391, 394 (1978), overruled on other grounds by People v. Thomas, 660 P.2d 1272, 1277 (Colo.1983) ; see also People v. Rueda , 649 P.2d 1106, 1109 (Colo.1982) (in assessing whether probable cause exists, court must consider officer's knowledge, expertise, and experience in a particular field).
¶ 35 The reasonable belief supporting seizure of an item in plain view need not *61 always be a personal belief held by the officer who physically seizes the item. Under certain circumstances, an officer executing a search warrant as part of an investigative team may seize an item in plain view when his or her fellow officers have a reasonable belief that the item is evidence of, or connected to, a crime. E.g., U.S. v. Banks, 514 F.3d 769, 776 (8th Cir.2008) ; see also People v. Grassi, 364 P.3d 1144, 1148-49, 2011 WL 4837291 (Colo.App. No. 09CA0400, Oct. 13, 2011) (cert. granted Aug. 13, 2012) (officer could draw the defendant's blood under section 42-4-1301.1, C.R.S.2012, when "the police as a whole" had probable cause to do so). This imputation of knowledge among investigating officers is commonly referred to as the fellow officer rule, or the collective knowledge doctrine. See People v. Taylor, 131 P.3d 1158, 1165 (Colo.App.2005) (describing the imputation of knowledge under the fellow officer rule); see also United States v. Waldrop, 404 F.3d 365, 370 (5th Cir.2005) (probable cause may be based on collective knowledge of officers at the scene, so long as there is some general communication among them). The purpose of the fellow officer rule is to allow law enforcement agencies to work together as a team instead of requiring that each officer possess all of the particularized information related to the investigation. See People v. Arias, 159 P.3d 134, 139 (Colo.2007).
¶ 36 Colorado is no stranger to the fellow officer rule, and Colorado courts have applied it to find probable cause in the context of (1) an arrest, People v. Freeman, 668 P.2d 1371, 1377 (Colo.1983), (2) a search warrant, People v. Reed, 56 P.3d 96, 100 (Colo.2002), and (3) obtaining a blood draw from a person suspected of driving under the influence of alcohol or drugs, Grassi, 364 P.3d at 1149. And while there is no Colorado appellate decision applying the rule to find probable cause to seize incriminating evidence under the plain view exception, we see no principled reason why the fellow officer rule should not apply in this context.
¶ 37 Indeed, the rule is consistently applied in federal courts to find probable cause to seize evidence under the plain view exception. E.g ., Banks, 514 F.3d at 776 ; Waldrop, 404 F.3d at 370 ; United States v. Wells, 98 F.3d 808, 810 (4th Cir.1996) ; United States v. Menon , 24 F.3d 550, 562-63 (3d Cir.1994) ; United States v. Johnston , 784 F.2d 416, 421 (1st Cir.1986) ; United States v. Rose , 695 F.2d 1356, 1359 (10th Cir.1982). But cf. United States v. Beal , 810 F.2d 574, 577 (6th Cir.1987) (in order to satisfy "immediately apparent" requirement, "probable cause must be the direct result of the officer's instantaneous sensory perception of the object") (internal quotations omitted). And declining to apply the collective knowledge doctrine to plain view seizures would only force law enforcement officers to have the most informed officers perform all searches or have multiple officers search the same area, which, at best, would be more costly and less efficient. See Menon , 24 F.3d at 563.
¶ 38 Here, the record reveals that Investigator Bahl was the lead investigator on the case, and directed the search team. Based on Investigator Bahl's personal investigation and interview of witnesses, he had a reasonable belief that the turquoise shirt was linked to the criminal activity under investigation. Officer Bliss was one member of the team executing the search warrant. She found the turquoise shirt and, prior to seizing the shirt, Officer Bliss communicated with Investigator Bahl to confirm that it was the shirt the police were seeking. Based on his personal knowledge, Investigator confirmed it was. On this record, we conclude that Officer Bliss had probable cause to seize the turquoise shirt. See Arias, 159 P.3d at 139 ; see also Menon, 24 F.3d at 563. We therefore conclude that the trial court did not err in denying the motion to suppress.
¶ 39 Jauch argues that the application of the fellow officer rule is not properly before us on appeal because the prosecution did not raise the application of the rule in the trial court or on appeal. She argues that the record is not complete and not factually developed with regard to the application of the rule. See Moody v. People, 159 P.3d 611, 616 (Colo.2007) (appellate court should only exercise sua sponte review where there is "a complete and factually developed lower court record").
¶ 40 The fellow officer rule, however, is not an independent exception to the warrant requirement.
*62 Rather, we consider it here as part of the probable cause analysis under the plain view exception. That exception was raised below and argued extensively by both parties. And the trial court held a hearing to resolve whether the plain view doctrine applied. Thus, the record regarding the plain view exception is "factually complete and straightforward" in this regard. Id. In addition, by order of this court, the parties were given the opportunity to address the application of the fellow officer rule in supplemental briefing and at oral argument.
¶ 41 Further, we have discretion to affirm decisions of the trial court, "particularly denial of suppression motions, on any basis for which there is a record sufficient to permit conclusions of law." Id. at 615 (citing People v. Aarness, 150 P.3d 1271, 1277 (Colo.2006) ; People v. Backus, 952 P.2d 846, 850 (Colo.App.1998) ).
¶ 42 Jauch also contends that, at the time Officer Bliss conferred with Investigator Bahl, the shirt had already been seized. However, a seizure occurs when the government meaningfully interferes with a defendant's possessory interest. Arizona v. Hicks, 480 U.S. 321, 324, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). Therefore, "no seizure occurs when an officer merely picks up an individual's property to look at it because this interference with the individual's possessory interest is not meaningful." People v. Ortega, 34 P.3d 986, 990 (Colo.2001).
¶ 43 Here, there is no indication that Officer Bliss did anything to interfere with Jauch's possessory interest, aside from lifting the shirt, prior to consulting with Investigator Bahl. Thus, we conclude that Officer Bliss had not yet seized the shirt at the time she consulted with Investigator Bahl. See Hicks, 480 U.S. at 324, 107 S.Ct. 1149 (although it "was the first step in a process" by which defendant was deprived of stereo equipment, no seizure occurred when a police officer lifted the equipment to record serial numbers); cf. People v. Conley, 804 P.2d 240, 245 (Colo.App.1990) (officer's actions in recording a serial number on a turntable during a consent search did not constitute a seizure "because they did not interfere with any possessory interest").
¶ 44 Accordingly, we find no error in the trial court's admission of the turquoise shirt under the plain view exception.
IV. Conclusion
¶ 45 Jauch's right to equal protection was not violated when she was convicted of identity theft, and the trial court did not err in admitting the turquoise shirt under the plain view doctrine.
¶ 46 The judgment is affirmed.
JUDGE CASEBOLT and JUDGE MÁRQUEZ* concur.

At oral argument, Jauch contended she was asserting an as applied challenge, though the substance of the argument in her opening brief compares the statutory elements of identity theft and unauthorized use of a financial transaction device, suggesting a facial challenge. We recognize, however, that the supreme court's jurisprudence in this area often uses the same analysis for as applied and facial challenges. Compare People v. Mozee, 723 P.2d 117, 126-29 (Colo.1986), with People v. Stewart, 55 P.3d 107, 116-118 (Colo.2002).

Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5 (3), and § 24-51-1105, C.R.S.2012.