23CA0086 Peo v Mitchell 07-17-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0086
Boulder County District Court No. 21CR98
Honorable Thomas F. Mulvahill, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Sheridan Orlando Jauques Mitchell,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE SULLIVAN
Tow and Yun, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

Philip J. Weiser, Attorney General, Leo T. Nguyen, Assistant Attorney General Fellow, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Joseph Paul Hough, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, Sheridan Orlando Jauques Mitchell, appeals the judgment of conviction entered on a jury verdict finding him guilty of three counts of possession with intent to sell or distribute a controlled substance and three counts of unlawful possession of a controlled substance. We affirm.

I.    Background

¶ 2    Mitchell, while on parole, escaped from a community placement program. The Department of Corrections' Fugitive Apprehension Unit, with assistance from the United States Marshals Service and other law enforcement agencies, investigated his escape. At the time, Mitchell had three active arrest warrants.

¶ 3    Officers eventually located Mitchell at a residence in Lafayette by using cell site location information, known colloquially as "pinging" Mitchell's cell phone. After Mitchell exited the residence and entered a vehicle, officers contacted Mitchell and placed him under arrest. Officers then searched Mitchell and the vehicle, finding a firearm, $2,648 in cash, and various amounts of methamphetamine, cocaine, and oxycodone pills.

¶ 4    Before trial, Mitchell filed (1) multiple motions to suppress evidence based on officers allegedly violating his Fourth

Amendment right to be free from unreasonable searches and seizures and (2) a motion to dismiss for alleged discovery violations after the Marshals Service failed to disclose requested cell site location information.  The district court denied Mitchell's motions.

¶ 5     The district court also granted two requests by the prosecution to continue the trial date, one due to the unavailability of two prosecution witnesses and one due to the prosecutor contracting COVID-19 a week before trial.

¶ 6     On appeal, Michell asserts that the district court erred by (1) denying his motions to suppress evidence; (2) denying his motion to dismiss for discovery violations; and (3) violating his statutory right to a speedy trial.  We address each contention in turn.

## II.    Fourth Amendment

¶ 7     Mitchell contends that the district court erred by denying his motions to suppress, arguing that law enforcement officers' warrantless "pinging" of his cell phone and search of his vehicle violated his Fourth Amendment right to be free from unreasonable searches and seizures.  We aren't persuaded.

## A. Applicable Law and Standard of Review

¶ 8 The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." *See also* Colo. Const. art. II, § 7.

¶ 9 But this prohibition against unreasonable searches and seizures doesn't apply with the same force to parolees as it does to others. *See Samson v. California*, 547 U.S. 843, 855 (2006); *People v. McCullough*, 6 P.3d 774, 777 (Colo. 2000). Parolees have a "substantially diminished expectation of privacy" because the state possesses an overwhelming interest in supervising parolees to reduce recidivism. *Samson*, 547 U.S. at 853, 855. As a result, a suspicionless search of a parolee, when authorized by state law, is generally considered reasonable under the totality of the circumstances. *See id.* at 846; *United States v. Mathews*, 928 F.3d 968, 976 (10th Cir. 2019).

¶ 10 Colorado law reflects this understanding of a parolee's diminished rights under the Fourth Amendment. For example, Colorado law generally prohibits government entities from obtaining location information regarding a person's electronic device without

a warrant, subpoena, or court order, § 16-3-303.5(2), C.R.S. 2024, but this restriction doesn't apply to the division of adult parole within the Department of Corrections, § 16-3-303.5(4).

¶ 11    Similarly, like the California law discussed in *Samson*, Colorado law requires that an offender eligible for parole agree to certain conditions before being granted parole. *See* § 17-2-201(5)(f)(I), C.R.S. 2024. A prospective parolee must, for example, sign a written agreement in which they agree, among other things, to "allow the community parole officer to make searches of the parolee's person, residence, or vehicle." § 17-2-201(5)(f)(I)(D); *see also In re Miranda*, 2012 CO 69, ¶ 13 ("[P]arole officers may search parolees' persons, residences, or vehicles unannounced, without a warrant, and without reasonable suspicion."). A warrantless parole search under this provision is constitutional, even in the absence of "reasonable grounds," if the search is (1) conducted pursuant to

any applicable statute and (2) not arbitrary, capricious, or harassing.[1]  *McCullough*, 6 P.3d at 781.

¶ 12     We review a trial court's ruling on a motion to suppress as a mixed question of law and fact.  *People v. Alameno*, 193 P.3d 830, 834 (Colo. 2008).  "[W]e defer to the trial court's factual findings so long as there is sufficient evidence in the record to support those findings, but we review the trial court's legal conclusions de novo." *Id.*

## B.    Analysis

¶ 13     Based on Mitchell's substantially reduced expectation of privacy as a parolee, we perceive no error in the district court's orders denying his motions to suppress evidence.

¶ 14     We first turn to whether the officers' "pinging" of Mitchell's cell phone and subsequent search of his vehicle were performed pursuant to any applicable statute.  *See McCullough*, 6 P.3d at 781. For purposes of our analysis, we will assume, without deciding, that

---

[1] The court in *People v. McCullough*, 6 P.3d 774, 781 (Colo. 2000), also imposed a third requirement — that the search be performed in furtherance of the purposes of parole.  The United States Supreme Court, however, later rejected that requirement in *United States v. Knights*, 534 U.S. 112, 116-18 (2001).  *See People v. Samuels*, 228 P.3d 229, 234 n.1 (Colo. App. 2009).

"pinging" a cell phone to obtain its real-time location information constitutes a search under the Fourth Amendment. *See People v. Licona-Ortega*, 2022 COA 27, ¶ 19 (making this same assumption).

¶ 15 In opposing Mitchell's suppression motions, the prosecution argued, in part, that law enforcement authorities collected cell site location information for Mitchell's phone and searched his vehicle under the authority conferred over parolees by sections 17-2-201(5)(f)(I)(D) and 16-3-303.5(4). The district court agreed and adopted the prosecution's position.

¶ 16 The record supports the court's determination. During a motions hearing, one of the Department of Corrections community parole officers who arrested Mitchell testified that his job duties included investigating parolees, like Mitchell, who had active arrest warrants. He explained that Mitchell participated in a parole community placement program and had agreed as a condition of the program to allow community parole officers to search his person and vehicles. The officer stated that officers searched Mitchell because, as a parolee, he remained under the Department of Corrections' supervision. Nothing in the officer's testimony, or in the record generally, suggests that law enforcement authorities

were investigating Mitchell for reasons unrelated to his status as an escaped parolee. Thus, the record supports the court's determination that the officers' "pinging" of Mitchell's cell phone and the search of his vehicle were conducted pursuant to their statutory authority over parolees. *See* §§ 17-2-201(5)(f)(I)(D), 16-3-303.5(4).

¶ 17     Nor was the officers' search of Mitchell impermissibly arbitrary, capricious, or harassing. *McCullough*, 6 P.3d at 781. After waiting for Mitchell to leave the residence, officers arrested Mitchell and searched his vehicle at a reasonable time, 4:30 p.m. The officers' arrest and search of Mitchell lasted approximately eight minutes. *See id.* at 783 (concluding officers' search wasn't arbitrary, capricious, or harassing when it was "conducted at a reasonable time, 5:00 p.m. in the afternoon, was reasonable in its scope, and was not unnecessarily prolonged"). Mitchell makes no argument on appeal revealing any arbitrary, capricious, or harassing action by officers at the scene.

¶ 18     We reach the same conclusion with respect to officers' "pinging" of Mitchell's cell phone. Officers knew that Mitchell had escaped while on parole and that he had agreed to warrantless

searches as a condition of his parole. *See People v. Delrio*, 259 Cal. Rptr. 3d 301, 311 (Ct. App. 2020) (search of parolee's cell phone wasn't arbitrary, capricious, or harassing when parolee was suspected of burglary and the officers' search "was related to legitimate parole monitoring"). And again, Mitchell points us to nothing in the record suggesting that officers harbored "personal animosity" toward him that might have rendered their search arbitrary, capricious, and harassing. *Id.*

¶ 19    Accordingly, the district court didn't err by denying Mitchell's motions to suppress.

## III.    Discovery Violations

¶ 20    Mitchell next contends that the district court abused its discretion by denying his motion to dismiss for alleged discovery violations. He asserts that the Marshals Service unlawfully withheld information about its surveillance and the pinging of his cell phone. We discern no abuse of discretion.

### A.    Additional Background

¶ 21    During a motions hearing, an officer involved in Mitchell's arrest testified that law enforcement authorities located Mitchell by using cell site location information. The officer also testified that

the Marshals Service may have been involved in locating Mitchell. Hearing this, Mitchell filed a discovery motion seeking the "[c]ell-site information location data derived from the electronic surveillance" that law enforcement authorities used to track his location. Mitchell also attempted to subpoena the cell site location information, among other things, directly from the Marshals Service.

¶ 22     When the Marshals Service didn't respond to the subpoena, the court issued an order directing it to provide the requested information.  The Marshals Service provided some information but moved to quash the subpoena and vacate the court's order as to the remainder (including the cell site location information), citing both the Supremacy Clause and federal regulations that barred disclosure of "investigative techniques."  The court granted the Marshals Service's motion to vacate.

¶ 23     Mitchell then moved to dismiss the charges, asserting the government had elected to invoke privilege rather than comply with its discovery obligations.  The prosecution opposed the motion by arguing, in part, that the requested information was "irrelevant" because (1) law enforcement arrested Mitchell pursuant to a valid

arrest warrant; (2) Mitchell, as a parolee, had a diminished expectation of privacy under the Fourth Amendment; and (3) the information requested from the Marshals Service didn't relate to any witness's testimony. The court agreed with the prosecution and denied Mitchell's motion.

### B. Applicable Law and Standard of Review

¶ 24 As relevant to this case, the prosecution must provide the defense with certain "material and information which is within the possession or control of the prosecuting attorney," Crim. P. 16(I)(a)(1), including but not limited to "[a]ny books, papers, documents, photographs or tangible objects held as evidence in connection with the case," Crim. P. 16(I)(a)(1)(IV). The prosecution must also disclose to the defense any material or information within its control "which tends to negate the guilt of the accused" or reduce their punishment for the charged offenses. Crim. P. 16(I)(a)(2). These obligations extend to material and information in the possession or control of "others who have participated in the investigation or evaluation of the case and who either regularly report, or with reference to the particular case have reported," to

the prosecution's office. Crim. P. 16(I)(a)(3); *see also People v. Grant*, 2021 COA 53, ¶ 22.

¶ 25     When crafting an appropriate sanction for a discovery violation, the court should take into account the reasons the disclosure wasn't made, the extent of any prejudice to the opposing party, the feasibility of rectifying the prejudice by a continuance, and any other relevant circumstances. *People v. Lee*, 18 P.3d 192, 196 (Colo. 2001). The court should impose the least severe sanction that will cure the prejudice to the defendant. *People v. Perez*, 201 P.3d 1220, 1233 (Colo. 2009).

¶ 26     If the court finds a discovery violation, the decision whether to impose a sanction lies within the trial court's sound discretion. *Lee*, 18 P.3d at 196. We accord great deference to the trial court's decision on discovery sanctions and won't disturb its decision absent an abuse of discretion. *Id.* A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or is contrary to law. *People v. Castro*, 854 P.2d 1262, 1265 (Colo. 1993).

## C.    Analysis

¶ 27    We will assume, again without deciding, that a discovery violation occurred when the Marshals Service declined to disclose the requested cell site location information.  *See* Crim. P. 16(I)(a)(3) (prosecution's discovery obligations extend to those who "participated in the investigation" and reported to the prosecution on a "particular case").

¶ 28    But even with the benefit of that assumption, Mitchell doesn't explain what prejudice he suffered from the Marshals Service's nondisclosure.  The district court agreed with the prosecution that the requested cell site location information was "irrelevant," a conclusion that Mitchell doesn't directly challenge on appeal.  *Cf. People v. Bueno*, 2018 CO 4, ¶ 47 (upholding discovery sanction where a "reasonable probability" existed that the "[withheld] evidence — which was relevant to the central issue in the case — may have affected the verdict").  Nor does Mitchell explain how the cell site location information, if produced, might have held exculpatory value.  *See People v. Daley*, 97 P.3d 295, 299 (Colo. App. 2004) (reversing discovery sanction where the exculpatory value of lost evidence was speculative); *see also People v. Stone,*

12

2021 COA 104, ¶ 52 (noting appellate courts don't consider undeveloped arguments) (*cert. granted* Oct. 17, 2022).

¶ 29 To the extent Mitchell argues that the cell site location information might have revealed a Fourth Amendment violation, we have already concluded that a suspicionless search of a parolee, when authorized by state law, is generally considered reasonable under the totality of the circumstances. *See Samson,* 547 U.S. at 846; *Mathews,* 928 F.3d at 976. Moreover, officers testified that Mitchell had outstanding arrest warrants for parole violations and other crimes when they arrested him. *See People v. Bischofberger,* 724 P.2d 660, 665 (Colo. 1986) (outstanding arrest warrants authorized the custodial arrest and search of the defendant, even absent evidence to believe that the defendant might possess a weapon or evidence of criminal activity). As a result, we perceive no prejudice suffered by Mitchell as a result of the Marshals Service's failure to disclose the requested cell site location information.

¶ 30 Accordingly, the district court didn't abuse its discretion by denying Mitchell's motion to dismiss for alleged discovery violations.

## IV. Statutory Speedy Trial

¶ 31 Mitchell contends that the district court erred by twice continuing the trial beyond the statutory speedy trial deadline. Specifically, Mitchell challenges the continuances caused by (1) the unavailability of two prosecution witnesses and (2) the prosecutor contracting COVID-19. We see no basis to reverse.

### A. Additional Background

¶ 32 Mitchell pleaded not guilty on September 3, 2021. After twice postponing trial at Mitchell's request, the district court scheduled the trial for June 13, 2022. The court calculated the new speedy trial deadline as July 3, 2022. Mitchell agreed with the court's calculation. In setting the June 13 trial date, the court didn't allow counsel the opportunity to first clear the date with witnesses but rather directed both sides to "make it work."

¶ 33 Shortly after the court set the trial date, the prosecution learned that two of its witnesses, Nick Goldberger and Laura Bell, would be unavailable. Goldberger, the lead investigator on the case, had a preplanned vacation out of state; and Bell, a chemical analyst from the Colorado Bureau of Investigation who tested the substances found at the scene, was scheduled to attend a multi-day

14

work conference. The prosecution moved to continue the trial to accommodate both witnesses' schedules, asserting that their testimony was material to its case. The court granted the prosecution's motion over Mitchell's objection, reset the trial for July 18, and tolled the speedy trial deadline until the reset trial date.

¶ 34 The prosecution filed a second motion to continue on July 12, approximately one week before the rescheduled trial, after the sole prosecutor contracted COVID-19. The prosecutor explained that he was experiencing worsening symptoms that severely impacted his ability to work and that public health protocols prevented him from being in the office to attend trial preparation meetings. The court granted the prosecution's request, agreeing that the reasons set forth in its motion justified continuing the trial. The court also found that a different prosecutor couldn't substitute for the assigned prosecutor because the case was "very serious and complicated" and "require[d] more than five days to prepare." Trial commenced approximately six weeks later, on August 22, after the assigned prosecutor recovered.

## B. Applicable Law and Standard of Review

¶ 35    Section 18-1-405(1), C.R.S. 2024, requires that the defendant be brought to trial within six months of pleading not guilty.  But certain periods of time may be excluded from the time computation. Section 18-1-405(6)(g)(I), for example, authorizes a trial court to grant the prosecution's request for a continuance without the defendant's consent and exclude the resulting delay, not exceeding six months, from the speedy trial calculation if the prosecution shows that (1) evidence material to the prosecution's case is unavailable; (2) the prosecution exercised due diligence in attempting to obtain the evidence; and (3) reasonable grounds exist to believe that the evidence will be available at a later date.  *See People v. Scialabba*, 55 P.3d 207, 209 (Colo. App. 2002); Crim. P. 48(b)(6)(VII)(A).

¶ 36    In felony cases, the court may also exclude from the speedy trial calculation the period of delay, not exceeding six months, caused by a continuance granted "to allow the prosecuting attorney additional time in felony cases to prepare the state's case and additional time is justified because of exceptional circumstances of the case and the court enters specific findings with respect to the

16

justification." § 18-1-405(6)(g)(II); *see Delacruz v. People*, 2017 CO 21, ¶ 20; Crim. P. 48(b)(6)(VII)(B).

¶ 37    We review a trial court's decision granting a continuance under section 18-1-405(6) for an abuse of discretion. *Delacruz,* ¶ 20.

## C.    Analysis

¶ 38    We first address Mitchell's challenge to the district court's decision continuing the June 13 trial due to Goldberger's and Bell's unavailability.  Next, we assess Mitchell's challenge to the court's decision continuing the rescheduled July 18 trial after the assigned prosecutor contracted COVID-19.[2]

### 1.    Witness Unavailability

¶ 39    Mitchell challenges the court's determination that (1) Goldberger's and Bell's testimony was material and (2) the prosecution exercised due diligence to obtain their attendance.

---

[2] For both challenges, Mitchell doesn't take issue with the length of the period that the district court excluded from the speedy trial period.  Rather, he challenges the reasoning that the court employed to grant the prosecution *any* length of a continuance beyond the speedy trial deadline.  In any event, the aggregate delay resulting from the two continuances didn't exceed six months. § 18-1-405(6)(g), C.R.S. 2024.

¶ 40    Turning to materiality, evidence is material if it has "some greater consequence to the state's case beyond mere relevance." *People v. Roberts*, 146 P.3d 589, 593 (Colo. 2006).  But the evidence need not be "indispensable."  *People v. Koolbeck*, 703 P.2d 673, 676 (Colo. App. 1985).

¶ 41    The record supports the court's finding that Goldberger's and Bell's testimony met this standard.  The prosecution made an offer of proof that Goldberger was its "primary" witness because he retrieved both the firearm and a majority of the controlled substances from Mitchell's person.  *See Roberts*, 146 P.3d at 595 (the prosecution's offer of proof may provide the trial court with sufficient information regarding the evidence's materiality to support a continuance past the speedy trial deadline).  The prosecution also explained that it had previously endorsed Goldberger as an expert in narcotics investigations, and that he would opine that the evidence suggested that Mitchell was involved in distributing controlled substances.

¶ 42    As to Bell, the prosecution argued that it had endorsed her as an expert witness to testify regarding her chemical analysis of the substances found on Mitchell and in his vehicle.  The prosecution

said Bell's testimony was "critical" to prove that Mitchell possessed controlled substances. Although Mitchell argues that "any number of chemists" could have testified regarding the recovered substances, Bell herself conducted the chemical analysis. *See Bullcoming v. New Mexico*, 564 U.S. 647, 652 (2011) (explaining "surrogate testimony" by a scientist who didn't sign the certification or perform or observe the test doesn't satisfy the Confrontation Clause). Moreover, Mitchell had previously requested under section 16-3-309(5), C.R.S. 2024, that "any and all" laboratory technicians be required to testify in person concerning "samples, testing, test results, [and] chain of custody information."

¶ 43    Given the prosecution's offers of proof, the importance of the witnesses' lay and expert testimony, and Mitchell's demand that Bell appear in person, we perceive no abuse of discretion in the court's decision that Goldberger's and Bell's testimony was of consequence, and therefore material, to the prosecution's case. *See Roberts*, 146 P.3d at 593.

¶ 44    Turning next to the prosecution's due diligence, the court found that the prosecution had made reasonable efforts to obtain Goldberger's and Bell's testimony. The record supports this finding.

The prosecution contacted both witnesses almost immediately after the court scheduled the trial for June 13. Indeed, the prosecution filed its motion to continue, alerting the court to its witnesses' unavailability, just nine days after the court set the trial.

¶ 45    In addition, the prosecution explained that it had been in contact with both Goldberger and Bell about previous trial settings and both had been cooperative in scheduling. Based on their prior cooperation, the prosecution wasn't obligated to subpoena Goldberger or Bell to establish due diligence. *See People v. Valles*, 2013 COA 84, ¶ 38 ("[W]here an unavailable witness demonstrates a history of cooperation with the prosecution, the prosecution is not required to attempt to secure the witness's presence with a subpoena in order to demonstrate due diligence."), *cert. granted on other grounds, judgment vacated, and case remanded*, No. 13SC551, 2015 WL 4999239 (Colo. Aug. 24, 2015) (unpublished order). Thus, we can't conclude that the district court abused its discretion by finding that the prosecution exercised due diligence.

¶ 46    We aren't persuaded otherwise by Mitchell's remaining arguments. Mitchell argues, for example, that Goldberger's and Bell's reasons for being unavailable — a preplanned vacation and

20

work conference — amounted to mere "inconvenience[s]" that didn't outweigh his speedy trial rights. Our supreme court rejected a similar argument in *People v. Lucy*, 2020 CO 68, ¶ 30, explaining that "when the prosecution establishes the 'unavailability' of evidence material to its case — regardless of the reason for such unavailability — it may be entitled to a continuance with a tolling of the speedy trial period for up to six months."

¶ 47     We also reject Mitchell's argument that the district court should have rescheduled the trial for an alternative date that fell before the July 3 speedy trial deadline. Mitchell didn't raise this argument in the district court, and Colorado's speedy trial statute makes clear that a defendant waives their right to be tried within the statutory period if they accept a trial date beyond the speedy trial deadline:

> If a trial date is offered by the court to a defendant who is represented by counsel and neither the defendant nor his counsel expressly objects to the offered date as being beyond the time within which such trial shall be had pursuant to this section, then the period within which the trial shall be had is extended until such trial date and may be extended further pursuant to any other applicable provisions of this section.

§ 18-1-405(5.1).

¶ 48     After the court granted the prosecution's first continuance motion, the court offered to reschedule the trial for July 18. Defense counsel responded, "The [d]efense can accept July 18th." Because neither Mitchell nor defense counsel "expressly object[ed]" to the offered date, Mitchell waived his right to an earlier trial date. § 18-1-405(5.1); *see also People v. Franco*, 74 P.3d 357, 359 (Colo. App. 2002) (defendant waived his right to trial within speedy trial period under section 18-1-405(5.1) when defense counsel had notice that court had set the trial date beyond the speedy trial deadline and counsel didn't object until four days before trial).

¶ 49     Accordingly, the record supports the court findings that (1) Goldberger's and Bell's testimony was material and (2) the prosecution exercised due diligence to secure their testimony. Mitchell doesn't assert that Goldberger and Bell wouldn't be available at a later date.  Thus, we conclude the district court acted within its discretion by granting the prosecution's first continuance motion.

### 2. Prosecutor's Illness

¶ 50 Mitchell also contends that the district court abused its discretion by continuing the rescheduled July 18 trial date beyond the speedy trial deadline when it granted the prosecution's second continuance motion due to the prosecutor contracting COVID-19. We aren't persuaded.

¶ 51 Consistent with section 18-1-405(6)(g)(II), the court made specific findings that a continuance was justified because (1) the sole prosecutor was experiencing worsening COVID-19 symptoms that severely impacted his ability to work and (2) public health protocols prevented the prosecutor from being in the office to attend preparation meetings during the week before trial. Given the factual support for these findings in the prosecution's motion, which Mitchell doesn't dispute, we can't say that the prosecutor contracting COVID-19 one week before trial fell short of an "exceptional circumstance[]" that justified a brief continuance. § 18-1-405(6)(g)(II); *see Lucy*, ¶ 1 (describing COVID-19 as a "highly contagious and potentially deadly illness" that triggered "a global pandemic the likes of which we haven't experienced in over a century").

¶ 52 We aren't convinced otherwise by Mitchell's argument that "any prosecutor with a pulse" could have substituted for the assigned prosecutor to try the case. The district court found that it was "not reasonable to expect or demand" that a prosecutor unfamiliar with the case substitute for the assigned prosecutor, in part, because "this is a very a serious and complicated case [that] requires more than five days to prepare." We agree with the court's assessment. By that stage of the case, the register of actions showed more than 150 entries, reflecting intense pretrial litigation on myriad issues. Thus, even if a new prosecutor had taken over the case, they would have required additional time to get up to speed before trial. *See People v. Goodpaster*, 742 P.2d 965, 968 (Colo. App. 1987) (concluding the trial court acted within its discretion in granting a continuance under section 18-1-405(6)(g)(II) when the newly appointed prosecutor needed additional time to interview witnesses, review records, and watch tapes of the incident).

¶ 53 Accordingly, the district court didn't abuse its discretion by granting the prosecution's second continuance motion.

## V. Disposition

¶ 54    We affirm the judgment.

JUDGE TOW and JUDGE YUN concur.